**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Felix MORALES, Defendant–Appellant.**

**No. 89–5052
Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 6, 1989.

Anthony J. Scremin, P.A., Miami, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Miami, Fla., Barbara A. Ward, Asst. U.S. Atty., Ft. Lauderdale, Fla., Linda Collins–Hertz, Asst. U.S. Atty., Cheryl A. Bell, Harriett R. Galvin, Miami, Fla., for plaintiff-appellee.

Before FAY, KRAVITCH and CLARK, Circuit Judges.

PER CURIAM:

## BACKGROUND

Appellant, a crewmember embarked on the SHELLEY, a 32–foot pleasure craft of United States registry, was arrested after the United States Coast Guard found 877 pounds of cocaine hidden in a false water tank which was located under the floorboards of the main berthing cabin. The Coast Guard officers boarded the vessel to conduct a safety and documentation inspection pursuant to 14 U.S.C.A. § 89(a). During that inspection, one of the Coast Guard

officers entered one of the two cabins on the vessel which serves as a common berthing area; once there, he detected the odor of bulk marijuana. This odor was verified by several other Coast Guard officers.

The Coast Guard officers later detected what appeared to be a larger than normal potable water tank. One end of the tank was visible from the engine room and the master of the vessel, Francisco Perez,[1] told the officers that the tank ran the length of the vessel. Perez also told the officers that the tank held approximately 130 gallons. Based upon the end dimensions on the tank visible from the engine room and Perez's statement as to its length, the officers properly concluded that a tank of that size would hold nearly six times as much water as Perez claimed. The officers asked Perez where he drew water from the tank and he was unable to show them any fittings through which the tank could be filled or drained; the hoses that appeared to be for the purpose of filling and draining the tank were not connected to the tank. Suspicious as to the true purpose of the "water tank," the officers then lifted the carpeting and floorboards from the floor of the main berthing cabin and inspected the area around the tank. They discovered garbage bags visible around the sides of the tank; the white powder inside tested positive for cocaine.

The appellant made a motion to suppress the cocaine seized on the ground that the Coast Guard conducted an unreasonable warrantless search and seizure contrary to the fourth amendment of the Constitution. The district court denied that motion without an evidentiary hearing on the ground that the defendant lacked standing to challenge the search. This court reversed and remanded the case for an evidentiary hearing on the precise nature of the crew's sleeping quarters on the SHELLEY and whether defendant had standing to challenge the search. *United States v. Morales*, 847 F.2d 671, 672 (11th Cir.1988) (per curiam) (concluding that there exists sufficient question as to whether the defendants had a legitimate expectation of privacy in the crew's sleeping quarters to warrant an evidentiary hearing). The district court then conducted an evidentiary hearing on the defendant's motion to suppress. The district court concluded that the crewmembers had a legitimate expectation of privacy in the crew's sleeping quarters, but held that the Coast Guard had reasonable suspicion to support its search. The court, therefore, denied defendant's motion to suppress. This appeal followed.

## DISCUSSION

### I. Standard of Review

The standard of review in suppression cases is clear:

> Absent clear error, we are bound by the district court's findings of fact and credibility choices at the suppression hearing. We construe all facts in the light most favorable to the prevailing party.... A finding of fact is clearly erroneous only when we are left with a definite and firm conviction that a mistake has been committed.

*United States v. Roy*, 869 F.2d 1427, 1429 (11th Cir.1989) (citations omitted). We find no such clear error in the district court's factual conclusions. The standard of review in these cases also "requires us to independently apply legal principles to the district court's findings of fact." *Id.* Thus, the district court did not err when it concluded that the odor of marijuana, the discrepancies in the water tank and other circumstances were sufficient to constitute probable cause to support the limited search of the vessel. We note that the Coast Guard's search was limited to the area of the tank which had aroused the officers' suspicions and was not a stem to stern search. *See United States v. Lopez*, 761 F.2d 632, 636 (11th Cir.1985) (a limited search into an unaccounted for space is constitutionally permissible based upon reasonable suspicion of criminal activity). Thus, only reasonable suspicion was re-

---

1. In the district court proceedings, Perez and appellant Morales were co-defendants. After they brought the current appeal, Perez voluntarily dismissed his appeal pursuant to Fed.R. App.P. 42(b).

quired to conduct this limited search. However, since the primary basis for reasonable suspicion in this case is the odor of marijuana in the main berthing compartment, the issue remains as to whether the Coast Guard officers' entry into the crew's main berthing cabin constituted an impermissible search.

## II. Safety and Documentation Inspections

█ Title 14 U.S.C.A. § 89(a) authorizes Coast Guard officers to board vessels and make safety and documentation inspections without suspicion of criminal activity. *Id.* at 636; *United States v. Thompson,* 710 F.2d 1500, 1505–06 (11th Cir.1983), *cert. denied,* 464 U.S. 1050, 104 S.Ct. 730, 79 L.Ed.2d 190 (1984). In *Thompson,* we noted that our cases have "expressly refrained from concluding that the area necessary for the proper conduct of a document and safety inspection includes *individual private* living quarters." *Id.* at 1506 (emphasis added). However, we have also observed that entry into a below decks cabin which is used by some or all of the crewmembers "would be a routine part of any safety and documentation inspection." *Id.* at 1507. *See also United States v. Clark,* 664 F.2d 1174, 1175 (11th Cir.1981).

The SHELLEY had two berthing compartments, the bow compartment and the main berthing compartment. The water tank was beneath the floorboards in the main berthing compartment; one had to pass through the main berthing compartment to get to the bow compartment. Both compartments had multiple bunks indicating that they were not private individual berthing areas. Thus, the Coast Guard officers were authorized pursuant to 14 U.S.C.A. § 89(a) to enter the main berthing compartment in the SHELLEY. Since it was constitutionally permissible for the officers to be in the main berthing compartment where they detected the odor of marijuana, the limited search that followed was also constitutionally permissible.

We recognize that our conclusion allowing Coast Guard officers to enter the SHELLEY's main berthing compartment pursuant to 14 U.S.C.A. § 89(a) calls into question whether the defendant had standing to challenge the search. To have standing to challenge a search on fourth amendment grounds, a defendant "must show an actual or subjective expectation of privacy in the area searched and the expectation must be one that 'society is prepared to recognize as reasonable.'" *Lopez,* 761 F.2d, at 635 (quoting *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)). In *United States v. Whitmire,* 595 F.2d 1303, 1312 (5th Cir.1979), *cert. denied,* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980), the court noted that the crew may have a legitimate expectation of privacy in the "crew's living quarters on a tanker that travels for months at sea." *See United States v. DeWeese,* 632 F.2d 1267, 1271 (5th Cir.1980), *cert. denied,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 188 (1981) (holding that the crew had no expectation of privacy in the ice hold of the fishing vessel, but observing that there are some areas, such as a "foot locker, duffel [sic] bag, private cabin or quarters [which] may well have been accessible to only ... one individual and not others, where a crewmember would have a legitimate expectation of privacy").

In *United States v. Williams,* 617 F.2d 1063, 1084 (5th Cir.1980) (en banc), the court concluded that an *owner* might have a legitimate expectation of privacy in the hold of the vessel. Since there was no evidence in the record pertaining to the vessel's ownership, the court concluded that it would either have to remand the case for a determination of Williams' relationship to the vessel, or assume he had standing to challenge the search. *Id.* at 1085. It chose the later course. The district court here predicated standing on the crew's expectation of privacy in the main berthing compartment. We find that they have no expectation of privacy in the main berthing compartment; however, we observe that here, as in *Williams,* the owner might have had some legitimate expectation of privacy in the hold of this vessel. Recognizing that such cases will often present close questions as to whether particular areas of a vessel give rise to an expectation of privacy, we follow the Fifth

Circuit's approach in *Williams* and decline to remand this case for a second time to obtain a more complete hearing on the question of standing. *Accord Lopez*, 761 F.2d at 635–36. Thus, in an effort to expedite this proceeding which already has been to this court once before, we assume the defendant has standing to challenge the search.

From the record it appears that the berthing area in the SHELLEY was in fact the *crew*'s sleeping quarters and not a single multipurpose below decks cabin; thus, the crew might have had a reasonable expectation of privacy. However, since (1) the main berthing compartment served as access to the bow berthing compartment; and (2) there were more crewmembers on board than berthing compartments, the main berthing compartment could not be a private cabin. Therefore, the Coast Guard officers could legitimately enter the main berthing cabin as part of a routine safety and documentation inspection. Once there, the officers detected the odor of marijuana which gave rise to a reasonable suspicion of criminal activity. The limited search that ensued was constitutionally permissible. *Lopez*, 761 F.2d at 636; *Williams*, 617 F.2d at 1087.

For the foregoing reasons, the district court's order denying defendant's motion to suppress is AFFIRMED.