[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15480
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20815-JAL-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHNNY EDWARD SCOTT, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 16, 2014)

Before HULL, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Johnny Edward Scott, Jr. was convicted of one count of conspiring to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846; two counts of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1); one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). On appeal he argues that the district court erred in denying his motions to suppress evidence and in admitting evidence that had not been properly sealed. He also claims the jury instructions and special verdict form constructively amended his indictment or alternatively caused a material variance. After review of the parties' arguments and the record, we affirm.

## I. Motions to Suppress

Scott argues that the district court erred in denying his initial and renewed motions to suppress evidence found during a search of his apartment.[1] He contends that the trial testimony of his codefendant, Josue D. Ordonez-Ramos,

---

[1] Scott also moved for an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 2676 (1978) ("[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.").

negated a number of facts in the affidavit that supplied probable cause for the search, and that without these facts the affidavit did not establish probable cause.

We review for clear error any factual findings made by the district court at a suppression hearing. United States v. Morales, 889 F.2d 1058, 1059 (11th Cir. 1989) (per curiam). However, whether facts set forth in an affidavit constitute a sufficient basis for a probable cause finding is a legal conclusion we review de novo. United States v. Lopez, 649 F.3d 1222, 1245 (11th Cir. 2011). Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be discovered in a particular place. United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991) (en banc). If, after any objectionable material is omitted, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no evidentiary hearing is required and the motion to suppress is properly denied. See Franks, 438 U.S. at 171–72, 98 S. Ct. at 2684.

On this record, we find no error in the district court's denial of Scott's motions to suppress. Even without the facts Scott disputes on appeal, the affidavit contained sufficient probable cause to search his apartment. The affidavit indicated, in specific rather than conclusory language, that Ordonez-Ramos bought or obtained drugs from Scott more than once, and that several of these transactions took place in Scott's apartment. See Illinois v. Gates, 462 U.S. 213, 234, 103 S.

3

Ct. 2317, 2330 (1983) (An "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [an informant's] tip to greater weight than might otherwise be the case."). The affidavit also noted that both drugs and a weapon had been observed in the apartment. And the affidavit contained facts showing that Ordonez-Ramos and Scott were planning a future transaction. These facts alone showed a fair probability that contraband would be found in Scott's apartment by "establish[ing] a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity," including the upcoming drug transaction. See United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002). As a result, the district court did not err in denying Scott's initial or renewed motions to suppress.

## II. Chain of Custody Objections

Scott also argues that the district court abused its discretion by admitting into evidence the drugs, gun, ammunition, and wallet officers found during the warranted search of his apartment because these items remained in unsealed bags for a minimum of one day, and in some instances months. He contends that, because the unsealed evidence was placed in a vault to which others had access, there was a significant break in the chain of custody that rendered it inadmissible.

4

We will not disturb an admissibility finding absent a clear showing of abuse of discretion.  United States v. Dothard, 666 F.2d 498, 501 (11th Cir. 1982).  Prior to admitting a physical exhibit into evidence, the district court must determine that the exhibit is in substantially the same condition as when the crime was committed.  United States v. Garcia, 718 F.2d 1528, 1533–34 (11th Cir. 1983).  Absent evidence to the contrary, the court may properly assume that an official would not tamper with exhibits.  Id. at 1534.  Minor gaps in the chain of custody affect only the weight to be attributed to the evidence, not its admissibility.  United States v. Roberson, 897 F.2d 1092, 1096 (11th Cir. 1990).

Scott did not present evidence that anyone tampered with the items or that they were contaminated while stored unsealed in the evidence vault.  As a result, the failure to seal the evidence bags goes to weight, not admissibility.  At trial Scott was able to cross-examine the government agents about the chain of custody issues and argue this point in closing.  Given the circumstances presented here, the district court did not abuse its discretion in admitting the physical evidence.

III.

A.

Scott argues that the prosecutor's closing argument, the district court's jury instructions, and the special verdict form constructively amended the conspiracy charge in the superseding indictment, thus warranting his acquittal on Count 1 or a

new trial.  Scott's argument arises out of the fact that although Scott and the others involved believed they were coordinating a sale of MDMA, the actual substance turned out to be MDMC.[2]

"A fundamental principle stemming from [the Fifth Amendment] is that a defendant can only be convicted for a crime charged in the indictment," as "[i]t would be fundamentally unfair to convict a defendant on charges of which he had no notice."  United States v. Keller, 916 F.2d 628, 633 (11th Cir. 1990).  An indictment is amended when the essential elements of the offense it contains are altered to broaden the possible bases for conviction.  United States v. Dennis, 237 F.3d 1295, 1299 (11th Cir. 2001).  To prove that a defendant committed conspiracy to possess with intent to distribute a controlled substance, in violation of § 841(a), the government must prove that the defendant knew the substance he was dealing with was a controlled substance, but it need not prove that he knew the exact nature of the controlled substance involved.  United States v. Sanders, 668 F.3d 1298, 1311 (11th Cir. 2012) (per curiam) ("[T]he district court did not amend or broaden the indictment by instructing the jury that Sanders did not have to know specifically that he possessed cocaine."); see also 21 U.S.C. § 841(a)(1) ("[I]t shall

---

[2] MDMA is the shorthand name for 3,4-methylenedioxymethamphetamine.  United States v. Hristov, 466 F.3d 949, 951 (11th Cir. 2006).  MDMC is the shorthand name for 3,4-methylenedioxymethcathinone hydrochloride or methylone, a substance very similar to MDMA in terms of appearance, chemical structure, and pharmacological effects, and sometimes sold as MDMA because it is cheaper to make.  Both are Schedule I controlled substances.  21 C.F.R. § 1308.11(d)(11), (47).

be unlawful for any person knowingly or intentionally . . . [to] possess with intent to manufacture, distribute, or dispense, <u>a controlled substance</u>." (emphasis added)). Where an indictment charges a defendant with a general violation of § 841(a) and separately alleges that the offense involved a particular controlled substance, the particular allegation is not required for conviction and is properly read as setting the statutory maximum sentence under 21 U.S.C. § 841(b).  <u>Sanders</u>, 668 F.3d at 1311.

Against this legal backdrop, we conclude that the superseding indictment was not constructively amended in Scott's case.  The superseding indictment charged Scott generally with conspiracy "to possess with intent to distribute a controlled substance."  It is true that the indictment further alleged that the offense involved MDMC, a schedule I controlled substance.  But that allegation was not required for conviction; it merely set the maximum sentence under the statute's penalty provision.  <u>See</u> <u>id.</u>; 21 U.S.C. § 841(a), (b).  Consistent with the superseding indictment, the government offered evidence at trial showing that (1) Scott knowingly sold a controlled substance, and (2) the substance was MDMC, although Scott believed it was MDMA.  On this record, the district court's instruction to the jury that the government did not have to prove that Scott knew the substance he possessed was MDMC, so long as he knew it was a controlled

7

substance, was correct under our precedent.[3]  See Sanders, 668 F.3d at 1311.  The jury's guilty verdict on the conspiracy count and its finding on the special verdict form that Scott conspired to possess with intent to distribute MDMA were consistent with the evidence and with the government's assertion during closing arguments that Scott and Ordonez-Ramos thought they were exchanging MDMA, which turned out to be MDMC.

### B.

Scott argues alternatively that there was a material variance on the conspiracy count.  "A variance occurs when the facts proved at trial deviate from the facts contained in the indictment but the essential elements of the offense are the same."  Keller, 916 F.2d at 634.  While a constructive amendment requires per se reversible error, a variance requires reversal "only when the defendant can establish that his rights were substantially prejudiced thereby."  United States v. Flynt, 15 F.3d 1002, 1005 (11th Cir. 1994) (per curiam).  "Prejudice generally is measured in terms of whether the defendants were deprived of fair notice of the

---

[3] Scott relies on our decision in United States v. Narog, in which we concluded the indictment had been constructively amended.  372 F.3d 1243, 1249 (11th Cir. 2004).  That case is distinguishable because the indictment charged the defendant specifically with "knowing and having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, that is, methamphetamine."  Id. at 1246 (quotation marks omitted).  As a result, when the court later instructed "the jury that it only needed to find that defendants knew or had reasonable cause to believe that the pseudoephedrine would be used to make any controlled substance, the district court unconstitutionally broadened the crimes charged in the indictment."  Id. at 1249.  Here, in contrast, the indictment charged possession with intent to distribute "a controlled substance" generally and only in a subsequent paragraph specified the drug involved for sentencing purposes.

8

crimes for which they were being tried, and whether the spillover of the proof of other crimes prejudiced them." United States v. Glinton, 154 F.3d 1245, 1252 (11th Cir. 1998).

No material variance occurred in this case. The superseding indictment charged that Scott possessed with intent to distribute a controlled substance and that the offense involved MDMC. As we explained above, the evidence at trial supported the charge and allegation, and the jury's verdict and special verdict findings were consistent with this evidence. Beyond that, Scott has failed to demonstrate that he was prejudiced by any variance other than unsubstantiated claims of jury confusion.[4]

Because there was no constructive amendment or material variance, the district court did not err in denying Scott's motions for judgment of acquittal or request for a new trial as to the conspiracy count.

---

[4] Given our finding that there was no constructive amendment of the indictment or a material variance, we reject Scott's arguments that the government's closing argument, the district court's instructions, and the special verdict form created jury confusion. Beyond that, the jury's verdict and the lack of questions from the jury do not evidence any confusion. See United States v. Felts, 579 F.3d 1341, 1342–43 (11th Cir. 2009) (per curiam) ("The Eleventh Circuit will reverse a district court because of an erroneous instruction only if the circuit court is left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." (quotation marks omitted)). We therefore also reject Scott's cursory subsidiary argument that his convictions on Counts 2, 3, and 5 were tainted by the same unsupported allegations of jury confusion.

IV.

In sum, we find no error in the denial of Scott's motions to suppress or the district court's evidentiary rulings.  We also conclude the record shows no constructive amendment of the indictment or any material variance.  Nor does the record reveal a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.  Scott's convictions are therefore

**AFFIRMED.**