[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11684
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cr-60016-KMW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES E. PRICE, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 14, 2014)

Before ED CARNES, Chief Judge, WILSON and MARTIN, Circuit Judges.

PER CURIAM:

James E. Price, III, was convicted by a jury of knowing distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), and knowing possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).  He challenges three of the district court's rulings and contends that the evidence was insufficient to prove the knowledge element for both convictions.

## I.

Law enforcement officers routinely search peer-to-peer file-sharing networks on the internet for computers sharing child pornography files.[1]  On December 20, 2010, Detective Brian Broughton of the Martin County, Florida Sheriff's Office was searching one such network when he noticed a user sharing 179 files with titles describing children performing sex acts or being raped. Broughton tried to download some of those files but was unsuccessful.  Ten days later, Broughton noticed that the same IP address was again sharing approximately the same number of suspiciously titled files.  He successfully downloaded four image files from the user's computer and determined that they did indeed depict child pornography.

Broughton then subpoenaed AT&T, the internet service provider, and requested the name of the subscriber to the IP address.  That subscriber was

---

[1] We recount the facts in the light most favorable to the verdict as the standard of review for sufficiency of the evidence requires.  See United States v. Beckles, 565 F.3d 832, 840 (11th Cir. 2009).

Andrea Plant, and she lived in Plantation, Florida. Because Plantation, Florida, is in Broward County, outside of Broughton's jurisdiction, Broughton forwarded his investigation file to Detective Robert Mauro, a special deputy of the Broward County Sheriff's Office. On three separate occasions in January 2011, Mauro downloaded suspiciously titled files from the same user and determined that they depicted child pornography. That month, Mauro also began to conduct periodic surveillance of the Plantation residence, during which he determined that Price lived there with Plant.

On February 15, 2011, Mauro submitted a sixteen-page affidavit in support of a search warrant for the Plantation residence. In that affidavit, Mauro stated that he and Broughton had each downloaded child pornography files from the same user. Mauro also described how Broughton had traced the user's IP address to the Plantation residence, and how Mauro had determined that Price lived there. Finally, Mauro stated that, in February 2000, Price had been suspected of downloading child pornography onto the hard drive of his computer at work, and that, although the FBI had requested a forensic examination of Price's computer, "the results [of the FBI's investigation were] not available at [that] time." Based on that affidavit, a magistrate judge issued the search warrant.

The next day, Mauro and other police officers executed the search warrant. From the living room, the officers seized a desktop computer and a large external

3

hard drive that was tucked behind the desktop's monitor and connected to the computer by cable. From the bedroom, the officers seized a leather bag containing a laptop and a small external hard drive, as well as a Brooks Brothers card and a frequent flyer card in Price's name. The officers also seized a BlackBerry cell phone that belonged to Price.

Tina McCoy, a computer forensics technician with the Broward County Sheriff's Office, later conducted a forensic examination of the seized items. On the large external hard drive, which was encrypted using a strong password, McCoy found 216 child pornography video and image files, including the files that Mauro and Broughton had discovered during their investigations. McCoy also found that a number of child pornography videos had been stored on the small external hard drive. Although those files had been deleted, McCoy successfully restored the videos to the hard drive and verified that they depicted child pornography. As for the desktop, McCoy did not find child pornography files stored on its internal hard drive. She did find, however, that both Price's user account and the desktop's testing profile user account had played several of the child pornography videos stored on the large external hard drive, including one entitled "new PTHC [pre-teen hard core] 2007 Tara eleven year mass toy anal fuck." Notably, both accounts were protected with strong passwords. The laptop, which Price used for his work as a computer consultant, had no child pornography

4

stored on it, either.  However, both Price's user account and the laptop's testing profile user account — which were just as strongly password-protected as their counterparts on the desktop — had accessed and played several of the child pornography videos stored on the large and small external hard drives.

McCoy also found Shareaza, a file-sharing software client, installed on both the desktop and the laptop.  With Shareaza, a user can search a number of file-sharing networks at once for a particular file and download portions of that file from multiple computers, thus speeding up the download process.  On the desktop, Shareaza directed downloads to the large external hard drive, and the Shareaza library listed the child pornography video and image files found on that hard drive. The video and image files had been designated for sharing.  On the laptop, Shareaza directed downloads to another external hard drive, which police did not recover.  McCoy could tell, however, that the user had entered search terms suggestive of child pornography, such as "hussy fan," "PTHC," and "Raygold" (referring to files collected by an infamous distributor of child pornography).  The Shareaza library listed videos and images with similarly suggestive titles.

After McCoy concluded her investigation, Jeanne Burtnett, also a computer forensics technician with the Broward County Sheriff's Office, created timelines based on information McCoy had obtained.  The purpose of Burtnett's timelines was to show that Price — and no one else — had used the computers to download

5

and play child pornography files.  One timeline, for example, showed all of the desktop's activity for approximately one hour in the early morning of February 7, 2011.  In that short span of time, Price's user account visited LinkedIn and other business-related websites, visited FedEx's package-tracking website, downloaded and played child pornography videos, and accessed a file on the large external hard drive.  Subpoenaed FedEx records showed that Price had signed for a package that day.

On January 26, 2012, a federal grand jury indicted Price with knowing distribution of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), and knowing possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).  Before trial, Price moved to produce or disclose with restrictions the grand jury proceedings in their entirety.  He sought that information because he believed that the grand jury had indicted him based on misleading information about the FBI's previous investigation into his child pornography related activity.  The crux of Price's claim was that, in Mauro's search warrant affidavit, Mauro had stated that the results of the FBI's investigation were not available when, in fact, the FBI had dropped the investigation due to a lack of evidence.  Price contended that the prosecution had similarly told the grand jury about the FBI's investigation without disclosing that the investigation had been dropped.  The district court denied Price's motion,

6

finding that Price had not shown (1) that his need for disclosure outweighed the need for secrecy in grand jury proceedings, and (2) that his request for "the totality of the grand jury materials" was limited to the material he needed.

Price also filed a pretrial motion to suppress all of the computer and digital evidence that was seized during the search of his residence. He argued, among other things, that the magistrate judge who issued the search warrant relied on the affidavit's misleading statement about the 2000 FBI investigation and that, had the magistrate judge been accurately informed, he might have concluded that there was no probable cause to search Price's home. Price requested an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674 (1978), to determine whether there would have been probable cause for the warrant without that misleading statement. But the district court denied that motion as well. The court reasoned that the information in the warrant affidavit was sufficient to establish probable cause even without any mention of the 2000 FBI investigation. Finally, Price filed a motion in limine to exclude any evidence related to the earlier FBI investigation. He contended that the information was inadmissible under Federal Rule of Evidence 404(b) because there was insufficient evidence to prove that he had done anything and the information's probative value was substantially outweighed by a danger of unfair prejudice. The district court denied the motion,

ruling that the evidence would come in if Price testified or if he opened the door to the issue during cross-examination of McCoy.

The case proceeded to trial. Broughton, Mauro, McCoy, and Burtnett testified for the government. At the close of the government's case, Price moved for a judgment of acquittal on the ground that the evidence presented was insufficient to convict him. The district court denied the motion. Price did not put on a defense, and he affirmed, under oath, that he decided not to testify due to the court's ruling on his motion in limine. The jury convicted him on both counts. This is Price's appeal.

Price contends that the district court erred in denying his motion that sought production or at least restricted disclosure of the grand jury proceedings. He also challenges the district court's denial of his request for a Franks hearing and its ruling on his motion in limine. Finally, Price contends that the evidence was insufficient to prove the knowledge element contained in both counts.

II.

Price first challenges the district court's denial of his motion for production or restricted disclosure of the grand jury proceedings. We review for an abuse of discretion a district court's order denying disclosure of grand jury proceedings. See United States v. Aisenberg, 358 F.3d 1327, 1338 (11th Cir. 2004); United States v. Elliot, 849 F.2d 554, 557 (11th Cir. 1988). "A district court abuses its

8

discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous, . . . and also when it misconstrues its proper role, ignores or misunderstands the relevant evidence, and bases its decision upon considerations having little factual support." FTC v. AbbVie Prods. LLC, 713 F.3d 54, 61 (11th Cir. 2013) (citation and quotation marks omitted).

"It has long been a policy of the law that grand jury proceedings be kept secret." Blalock v. United States, 844 F.2d 1546, 1555 (11th Cir. 1988). Codifying that traditional rule of grand jury secrecy, Federal Rule of Criminal Procedure 6(e) prohibits the disclosure of grand jury materials except in certain enumerated circumstances. One such circumstance is "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).

As the party requesting disclosure, the defendant must make three showings: first, "that the material [he] seek[s] is needed to avoid a possible injustice in another judicial proceeding"; second, "that the need for disclosure is greater than the need for continued secrecy"; and finally, "that [his] request is structured to cover only material so needed." Douglas Oil Co. of Cal. v. Petrol Stops Nw., 441 U.S. 211, 218 n.9, 99 S.Ct. 1667, 1672 n.9 (1979); see Aisenberg, 358 F.3d at

9

1347–48.  To satisfy the second requirement, the defendant "must show a compelling and particularized need for disclosure."  Aisenberg, 358 F.3d at 1348 (collecting cases).  That is, the defendant must show that "certain difficulties peculiar to [his] case . . . could be alleviated by access to specific grand jury materials . . . without doing disproportionate harm to the salutary purpose of secrecy embodied in the grand jury process."  Id. at 1348–49 (quotation marks omitted).  "[A] general allegation that grand jury materials are necessary for the preparation of a motion to dismiss" the indictment does not satisfy the "particularized need" standard.  United States v. Burke, 856 F.2d 1492, 1496 (11th Cir. 1988).  Nor do "unsubstantiated allegations of grand jury manipulation." United States v. Cole, 755 F.2d 748, 759 (11th Cir. 1985).

The district court did not clearly err by finding that Price failed to demonstrate a "particularized need" for the grand jury materials.  In support of his request, Price presented no evidence that the grand jury received any information (misleading or otherwise) about the 2000 FBI investigation.  To the contrary, according to the Assistant United States Attorney who prosecuted Price's case, the transcripts of the grand jury proceedings did not mention that investigation.  In short (and as Price himself conceded in his motion), Price sought disclosure of the grand jury proceedings in their entirety with the hope of finding testimony to support his unsubstantiated allegations of grand jury manipulation.  Rule 6(e) does

not permit a fishing expedition at the expense of grand jury secrecy.  Thus, the district court did not abuse its discretion in denying Price's request for disclosure of the grand jury proceedings.

### III.

Next, Price challenges the district court's denial of his request for a <u>Franks</u> hearing.  We generally review for an abuse of discretion a district court's denial of an evidentiary hearing, <u>United States v. Arbolaez</u>, 450 F.3d 1283, 1293 (11th Cir. 2006), and we have stated that "abuse of discretion review is appropriate" for denial of a <u>Franks</u> hearing.  <u>United States v. Barsoum</u>, 763 F.3d 1321, 1328 (11th Cir. 2014).  We review only for clear error any factual findings the district court made in deciding whether to hold a <u>Franks</u> hearing.  <u>See</u> <u>United States v. Reid</u>, 69 F.3d 1109, 1113 (11th Cir. 1995); <u>United States v. Morales</u>, 889 F.2d 1058, 1059 (11th Cir. 1989) (per curiam).

Affidavits supporting arrest warrants are presumptively valid.  <u>Franks</u>, 438 U.S. at 171, 98 S.Ct. at 2684.  Thus, a defendant is generally not entitled to an evidentiary hearing on a motion to suppress based on alleged misrepresentations or omissions in a search warrant affidavit.  A defendant has the constitutional right to such a hearing — a <u>Franks</u> hearing — only where he "makes a substantial preliminary showing" that (1) the affiant deliberately included a false statement in the affidavit or deliberately omitted material information, or made the false

11

statement or omission with reckless disregard for the truth; and (2) the false statement or omission altered the probable cause showing.  Franks, 438 U.S. at 155–56, 98 S.Ct. at 2676; see Barsoum, 763 F.3d at 1329; United States v. Kapordelis, 569 F.3d 1291, 1309–10 (11th Cir. 2009).

In the district court, Price argued that Mauro showed reckless disregard for the truth when he stated in the search warrant affidavit that the results of the 2000 FBI investigation were not available.  Price contended that, before Mauro could mention the investigation in the first place, he had a duty to learn how the investigation actually played out.  Price requested a Franks hearing in order to cross-examine Mauro "about the gap in the information [that Mauro presented to the magistrate judge] and the apparent reckless disregard for the truth," but the district court denied his request.  Price challenges the district court's "failure to allow a full hearing on the matter."

Price misunderstands Franks.  Under that decision, a defendant must make "a substantial preliminary showing" that the affiant deliberately included a false statement in the affidavit or deliberately omitted material information.  Franks, 438 U.S. at 155–56, 98 S.Ct. at 2676 (emphasis added).  The allegations of deliberate falsehood or of reckless disregard for the truth "must be more than conclusory and must be supported by more than a mere desire to cross-examine."  Id. at 171, 98 S.Ct. at 2684.  The district court fully addressed Price's allegations of reckless

12

falsity or omission and found them unpersuasive.  That finding was not clearly erroneous.  And in any event, Price is not able to show that probable cause would not exist if the statement he identifies as false were stricken.  The district court did not abuse its discretion in denying Price's request for a <u>Franks</u> hearing.

IV.

Price's next contention concerns the district court's ruling on his motion in limine.  Before trial, Price filed a motion in limine to exclude any evidence related to the 2000 FBI investigation, arguing that such evidence was inadmissible under Federal Rules of Evidence 404(b) and 403.  The district court denied Price's motion, ruling that the evidence would come in if Price testified or if he opened the door to the issue during cross-examination of McCoy.  The district court reasoned that Price's defense theory at trial was likely to be the same theory he had argued in 2000:  that an unknown person placed the images on his hard drive.  According to the district court, evidence related to the 2000 FBI investigation thus tended to disprove "the stunningly unlikely possibility that twice in his adult lifetime [Price] finds himself at the mercy of unscrupulous 'others' who used his computer for the very same thing he is in court for here today."

At the close of the government's case, Price's counsel advised the district court that Price did not wish to present a case.  Under oath, Price stated that he had decided not to testify solely because of the district court's adverse ruling on his

13

motion in limine.  He now argues that the district court erred in denying his motion in limine because the evidence related to the 2000 FBI investigation was inadmissible under Federal Rules of Evidence 404(b) and 403.  He also argues that the court's ruling forced him to surrender his constitutional right to testify on his own behalf.

We considered — and rejected — the same arguments in United States v. Hall, 312 F.3d 1250 (11th Cir. 2002).  In that case the district court made a pretrial ruling that if the defendant asserted "lack of intent" as a defense in his trial involving distribution and receipt of child pornography, the government could introduce evidence of the defendant's child molestation conduct under Rule 404(b).  Id. at 1253–54.  The defendant chose not to testify, and the government did not introduce the molestation evidence.  Id. at 1254.  The defendant argued that the district court's pretrial ruling was erroneous and had forced him to surrender several constitutional rights, including the right to testify on his own behalf.  Id. at 1255 & n.4.  We held that the district court's pretrial decision about the Rule 404(b) evidence was not reviewable on appeal, reasoning that, because the evidence never came in, we could only speculate as to the possible harm the district court's in limine ruling might have caused.  (Or, for that matter, the possible good, as we also noted that the defendant's decision not to testify "obtained the trial advantage of limiting the government's evidence on the intent

14

issue.")  Id. at 1255–58; see United States v. Luce, 469 U.S. 38, 39–43, 105 S.Ct. 460, 462–64 (1984).

In that same case we also rejected the defendant's attempt to couch his claim as a constitutional one.  Hall, 312 F.3d at 1258 n.9.  In doing so we distinguished two cases, Brooks v. Tennessee, 406 U.S. 605, 92 S.Ct. 1891 (1972), and New Jersey v. Portash, 440 U.S. 450, 99 S.Ct. 1292 (1979), where the defendants had chosen not to testify due to the trial courts' adverse rulings on constitutional questions, but they had successfully preserved their constitutional claims nonetheless.  Hall, 312 F.3d at 1258 n.9; see Luce, 469 U.S. at 42–43, 105 S.Ct. at 464.  In Brooks, the trial court had considered the constitutional validity of a Tennessee statute that required the defendant to testify at the start of the defense case if he wished to testify at all; in Portash, the trial court had ruled that the constitution did not bar the use of a defendant's immunized grand jury testimony for impeachment purposes.  In contrast, the defendant in Hall claimed that he chose not to testify due to the district court's adverse ruling on an evidentiary question. That is why we held in Hall that by failing to testify the defendant had failed to preserve his evidentiary admissibility claim.  Under Hall, Price's challenge to the district court's ruling on his motion in limine is not reviewable on appeal.  Because the adverse evidence never came in, we have nothing to review.

V.

Finally, Price contends that the government failed to satisfy its burden to prove the knowledge element for both of his convictions.  We review de novo whether sufficient evidence supports a conviction, drawing all reasonable factual inferences from the evidence in favor of the verdict.  United States v. Beckles, 565 F.3d 832, 840 (11th Cir. 2009).  Evidence is sufficient to support a conviction if a reasonable trier of fact could find that it established guilt beyond a reasonable doubt.  "[I]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." United States v. Vera, 701 F.2d 1349, 1357 (11th Cir. 1983) (quotation marks omitted).

Under 18 U.S.C. § 2252(a)(2) it is a crime to knowingly distribute material containing a depiction of a minor engaging in sexually explicit conduct, and under 18 U.S.C. § 2252(a)(4)(B) it is a crime to knowingly possess material containing a depiction of a minor engaging in sexually explicit conduct.  The word "knowingly" in section 2252 applies both to the relevant action, such as distribution and possession, and to the nature of the material in question.  See United States v. X– Citement Video, Inc., 513 U.S. 64, 68–69, 78, 115 S.Ct. 464, 467, 472 (1994); United States v. Alfaro–Moncada, 607 F.3d 720, 733 (11th Cir. 2010).

16

Sufficient evidence supported the jury's conclusion that Price had the requisite mens rea to commit the distribution and possession offenses.  As for distribution, the government had to prove that Price knowingly made child pornography files accessible to others.  See United States v. Spriggs, 666 F.3d 1284, 1287 (11th Cir. 2012).  The evidence showed that Shareaza was installed on both Price's desktop and laptop, and specifically on Price's user account and the testing profile user account on each computer.  The evidence also showed that all four accounts were protected with strong passwords and that Price, who worked as a computer consultant, was well versed in information technology.  Broughton testified that a Shareaza user must designate files for sharing, and can set the application such that it will automatically start running, and sharing files, once the user's computer is turned on.  McCoy testified that child pornography files had been designated for sharing on the Shareaza library, and that she had to start Shareaza manually.  From that evidence, a reasonable jury could have concluded that Price installed Shareaza on his computers, designated child pornography files for sharing, and understood that Shareaza enabled other users to access those files once he manually started the program.  Thus, the evidence was sufficient to support Price's conviction for knowing distribution of child pornography.

As for possession, the evidence showed that the large external hard drive seized from Price's living room was encrypted using a strong password and

17

contained hundreds of child pornography files. Price's user and testing profile user accounts on both the desktop and the laptop had played several of those files. The evidence also showed that Shareaza was installed on both Price's desktop and laptop, and that it had been used to search for and download files with names suggestive of child pornography. Broughton testified that a user entering those search terms must know that he is likely to find child pornography; even a user looking for adult pornography is unlikely to stumble upon child pornography accidentally. Finally, Burtnett, who created timelines for the jury based on information McCoy had obtained from Price's devices, testified that on three separate occasions, Price was using a computer for business purposes within minutes of when that computer accessed files with names suggestive of child pornography. From that evidence, a reasonable jury could have concluded that Price, using his password-protected accounts, searched for, downloaded, and viewed files containing child pornography. Thus, the evidence was sufficient to support Price's conviction for knowing possession of child pornography.

Because the district court did not err in denying Price's requests for disclosure of the grand jury transcripts and for a Franks hearing; because his challenge to the district court's in limine ruling is unreviewable on appeal; and

18

because there was sufficient evidence to support his convictions, Price's

convictions are **AFFIRMED**.[2]

---

[2] Price's "motion to dismiss counsel and proceed pro se" is **DENIED**.