J-S22044-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SEAN DAVID O'CONNER, | : | |
| | : | |
| Appellant | : | No.  1148 MDA 2015 |

Appeal from the Judgment of Sentence June 18, 2015
in the Court of Common Pleas of Adams County,
Criminal Division, at No(s): CP-01-CR-0000828-2014

BEFORE:    MUNDY, DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                    **FILED MAY 11, 2016**

Sean David O'Conner (Appellant) appeals from the judgment of

sentence imposed following his conviction for driving under the influence of

alcohol (DUI).  We affirm.

The trial court summarized the relevant factual history of this matter

as follows.

> In the early morning hours of June 28, 2014, Trooper
> Lasher, of the Pennsylvania State Police, was on patrol in full
> uniform and driving a marked police vehicle. Trooper Lasher was
> on duty with Trooper Eric Stuby. Trooper Stuby was operating
> the patrol vehicle and Trooper Lasher was riding in the front
> passenger seat. At approximately 1:25 a.m. the Troopers were
> riding on State Route 97 traveling northbound. Beginning a
> couple miles prior to the interchange of State Route 97 and
> State Route 15 the Troopers were following a 1992 purple Jeep
> Cherokee. While following the Jeep Cherokee northbound on
> State Route 97, the Troopers observed the Jeep Cherokee
> weaving within its lane of travel, but did not observe any erratic
> driving or speeding by the operator of the Jeep Cherokee.

*Retired Senior Judge assigned to the Superior Court.

Along the stretch of road, approximately two miles from where the Troopers began following the Jeep Cherokee, State Route 97 has one northbound lane and one southbound lane divided by a double yellow centerline. The State Route 97 road dynamics change upon approach to the interchange with State Route 15. State Route 15 is a four-lane highway which passes underneath State Route 97. In the area of the interchange State Route 97 northbound changes from one lane to, initially, three lanes, then two lanes before returning to a single northbound lane on the northern side of the interchange. Specifically, at the area of the interchange the lane which was northbound State Route 97 prior to the interchange becomes a left turning lane onto the onramp for State Route 15 southbound. The middle lane is a single lane proceeding straight through the interchange. The right hand lane is a third lane which is for right hand turns to proceed onto the onramp for State Route 15 northbound. Upon reaching the bridge over State Route 15 a vehicle intending to continue through the interchange and proceed northbound on State Route 97 is required to change from what was the northbound lane, and which becomes the left turn lane at the area of the interchange, into the center lane in order to continue straight on State Route 97 northbound. At the interchange there is a white turn arrow painted on what was the northbound lane to indicate that it has changed into a left turn lane onto State Route 15 southbound. There are also overhead signs indicating the purpose of each of the three different lanes. After crossing the bridge over State Route 15, at the area where the left turn lane onto State Route 15 ends and vehicles enter on State Route 97 from the State Route 15 southbound off ramp there are no markings on the road surface.

As the Troopers followed the Jeep Cherokee, which maintained its course of travel in its original lane across the bridge, the Cherokee changed lanes moving one lane to the right in order to continue proceeding northbound on State Route 97 when the left turn lane onto State Route 15 southbound ended. The operator of the 1992 purple Jeep Cherokee failed to signal the lane change prior to making his change of lanes. The Troopers did not immediately effectuate a traffic stop but rather continued following the Jeep Cherokee northbound on State Route 97 for approximately one and a half to two additional miles. During the additional distance traveled the Troopers observed the vehicle continuing to weave within its lane of travel

but never touching or crossing over the double yellow centerline or white fog line. After continuing to follow the vehicle for that one and half to two mile distance the Troopers effectuated a motor vehicle stop for the previously observed motor vehicle code violation, specifically failing to signal a lane change, in violation of Section 3334(a) of the Pennsylvania Motor Vehicle Code.

Upon approaching the Jeep Cherokee, the Troopers identified the Appellant as the operator of that motor vehicle. Troopers informed Appellant the purpose of the stop was because the Troopers witnessed Appellant correcting his lane of travel at the 97/15 interchange without the use of a turn signal. During Trooper Lasher's interaction with Appellant he observed signs of intoxication such as glassy and bloodshot eyes along with the odor of alcoholic beverages emanating from his breath. Trooper Lasher then asked Appellant to exit the vehicle and submit to field sobriety tests. Appellant was asked to perform the walk and turn test and the one-leg stand test[.] Appellant showed signs of intoxication during each. At which time, Trooper Lasher placed Appellant under arrest for suspicion for driving under the influence of alcohol and placed him in the back of the patrol unit. To save the Appellant a tow bill, the Troopers called Appellant's mother and step-father to pick up the vehicle and pick him up from the hospital. It took [] Appellant's parents approximately 25-30 minutes to arrive on scene. At that time the Troopers took [] Appellant to the hospital. The Troopers arrived with [] Appellant at the hospital at approximately 2:08 in the morning. Appellant was then read his DL-26, an implied consent warning, which Appellant then signed and dated. Trooper Lasher noted the time that the DL-26 was read and signed by Appellant was 2:12 a.m. Trooper Lasher again indicated on the DL-26 the time in which the blood was drawn, 2:19 a.m. [The test revealed that Appellant had a blood alcohol concentration (BAC) of at least .10% but less than .16% within two hours after operating a motor vehicle.] Appellant was charged with [DUI - general impairment, DUI - high rate of alcohol], failure to keep right, disregard traffic lane (single), turning movements and required signals, [and] careless driving.

Trial Court Opinion, 8/21/2015, at 1-3 (footnotes and unnecessary capitalization omitted).

Appellant filed an omnibus pre-trial motion to suppress, which was denied following a hearing on March 13, 2015. The matter proceeded to a non-jury trial on April 8, 2015. Prior to the beginning of trial, the court granted the Commonwealth's request to withdraw Count I, DUI - general impairment and the summary motor vehicle offenses. The Commonwealth proceeded to trial on Count 2, DUI - high rate of alcohol. At the conclusion of trial, the court found Appellant guilty.

Appellant's conviction was his third DUI offense for sentencing purposes. Accordingly, on June 18, 2015, Appellant was sentenced to 60 months of intermediate punishment. Appellant timely filed a notice of appeal. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

On appeal, Appellant asks us to consider whether the trial court erred "in finding that an investigatory stop based on admitted pretext did not violate Appellant's privacy guarantees under Article I, Section 8 of the Pennsylvania Constitution." Appellant's Brief at 4.

We address Appellant's claim mindful of our standard of review.

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's

factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation omitted).

Appellant argues that the motor vehicle stop was pretextual and contends that the Troopers used "a *de minimus* (and non-[investigable]) offense [to] stop [Appellant's] vehicle for the purpose of furthering an investigation into a more serious crime for which they [did] *not* have probable cause." Appellant's Brief at 10 (emphasis in original). In support of his argument, Appellant cites to a portion of the suppression hearing transcript where, on cross-examination, Trooper Lasher agreed with defense counsel that the "purpose of the stop was an investigatory stop for purposes of determining whether [Appellant] was [DUI]." *Id.* at 30. Appellant contends that the Trooper's statement contradicts the stated reason for the stop, violation of 75 Pa.C.S. § 3334, related to use of turn signals, and demonstrates that the Trooper "used administrative authority as a pretext to conduct further investigation into a possible DUI for which there was no evidence." *Id.* at 30-31.

We begin by examining the quantum of suspicion required to effectuate a stop under section 3334. It is well-settled that a police officer has the authority to stop a vehicle when he or she has reasonable suspicion that a violation of the vehicle code has taken place, for the purpose of obtaining necessary information to enforce the provisions of the code. 75 Pa.C.S. § 6308(b). However, if the violation is such that it requires no additional investigation, the officer must have probable cause to initiate the stop. **Commonwealth v. Feczko,** 10 A.3d 1285, 1291 (Pa. Super. 2010).

Instantly, Trooper Lasher testified that he stopped Appellant for "improper lane change and not using the turn signal" at the 97/15 interchange. N.T., 2/17/2015, at 8-9. As further investigation would not help to establish whether Appellant committed the above offenses, Trooper Lasher was required to have probable cause to initiate the stop.

"The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. We evaluate probable cause by considering all relevant facts under a totality of circumstances analysis." **Commonwealth v. Hernandez**, 935 A.2d 1275, 1284 (Pa. 2007) (quotation and citations omitted). The statute governing use of signals provides in pertinent part as follows.

**§ 3334. Turning movements and required signals**

> **(a) General rule.**—Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.
>
> **(b) Signals on turning and starting.**—At speeds of less than 35 miles per hour, an appropriate signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour. The signal shall also be given prior to entry of the vehicle into the traffic stream from a parked position.

75 Pa.C.S. § 3334.

Trooper Lasher directly observed Appellant's failure to use a turn signal during a lane change; accordingly, he possessed facts that would lead a reasonable person to conclude that a violation of the motor vehicle code had occurred and was justified in effectuating the stop. **Hernandez,** 935 A.2d at 1284. Thus, the trial court did not err in denying Appellant's motion to suppress.

Moreover, contrary to Appellant's argument, the Pennsylvania constitution does not prevent the police from "stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if it is a minor offense." **Commonwealth v. Chase**, 960 A.2d 108, 113 (Pa. 2008). Having determined that the Troopers had probable cause to stop Appellant's vehicle, the fact that he was later determined to be DUI is immaterial to the constitutionality of the initial stop. Additionally, Trooper

Lasher's belief that Appellant was DUI did not somehow prevent the Trooper from stopping Appellant where he had probable cause to do so based on an observed violation of the motor vehicle code.[1] Accordingly, we reject Appellant's argument that the stop was invalid as pretextual.[2]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 5/11/2016

---

[1] Appellant's failure to use a turn signal, coupled with the time of night and his repeated weaving in his lane of travel, provided the Troopers with reasonable suspicion that Appellant was DUI. Accordingly, the Troopers would have been justified in pulling Appellant over to investigate further. **See Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa. Super. 2010) (upholding a traffic stop for DUI based on reasonable suspicion where the trooper "testified that the basis for the traffic stop was because [Feczko] was 'weaving within his lane and also crossed out of his lane of travel on numerous occasions.'").

[2] Additionally, we find unavailing Appellant's reliance on **Commonwealth v. Lehman**, 857 A.2d 686 (Pa. Super. 2004). **Lehman** is readily distinguishable from the case at bar as it involved a stop predicated on a tip from an unknown third party, not a direct observation of a motor vehicle code violation by a law enforcement officer.