COMMONWEALTH of Pennsylvania,
Appellant,

v.

Michael T. KONDASH, Appellee.

Superior Court of Pennsylvania.

Submitted Jan. 14, 2002.
Filed Sept. 30, 2002.

Karen E. Kuebler, Assistant District Attorney, Bellefonte, for Com.

Karen G. Muir, State College, for appellee.

Before STEVENS, HESTER, and CAVANAUGH, JJ.

OPINION BY STEVENS, J.:

¶ 1 The Commonwealth appeals from the order entered on May 17, 2001, in the Court of Common Pleas of Centre County, which suppressed heroin, intravenous needles, and a stationhouse confession obtained from Appellee after an arrest. For the following reasons, we reverse and remand for further proceedings.

¶ 2 On the morning of December 18, 2000, Detective William Muse of the State College Police Department and Centre County Drug Task Force established surveillance of Appellee's residence after at least five known heroin users named Appellee as a heroin trafficker. N.T. 5/3/01 at 4–7. Specifically, the information on Appellee was that he customarily drove to a North Philadelphia residence in the morning to obtain heroin from one Javier "Fats" Gonzalez, a man previously arrested for heroin distribution. N.T. at 8, 9, 32. Surveillance watched Appellee enter his vehicle and drive off, but lost contact with him in traffic minutes later.

¶ 3 Suspecting Appellee was headed for Philadelphia, Detective Muse contacted Bureau of Narcotics Investigation ("BNI") Agent David Farrelly in Philadelphia and asked that surveillance of Gonzalez's residence be established in anticipation of Appellee's arrival. N.T. at 9. Detective Muse provided Agent Farrelly with a description of Appellee and his vehicle, including tag information. N.T. at 10.

¶ 4 With surveillance of Gonzalez's residence in place, BNI Agent Bob Weber watched Appellee arrive, enter Gonzalez's

home for less than five minutes, exit, and drive away. N.T. at 11. Agent Weber followed Appellee to the parking lot of T.G.I. Friday's restaurant on Philadelphia's City Line Avenue, where Appellee met a man fitting the description of Lionel Bassett, also the subject of a Centre County Drug Task Force investigation. N.T. at 11. Appellee and Bassett then took turns entering the restaurant's men's room before driving off again, conduct which matched informants' accounts of how Appellee would routinely stop at either T.G.I. Friday's or the first Turnpike rest stop to use a portion of the heroin before resuming his trip home. N.T. at 11–12. Agent Weber followed Appellee back to the Pennsylvania Turnpike and notified Detective Muse that Appellee appeared headed back home. Id.

¶ 5 Less than three hours later, Detective Muse and Pennsylvania State Trooper Richard Swank were parked along State Route 322 when they saw two men drive by in Appellee's car. N.T. at 13. Detective Muse had positioned additional patrol in Centre County to stop Appellee's car in furtherance of a drug investigation, and Harris Township Officer Joseph Zaffutto executed the stop once Appellee entered the jurisdiction. N.T. at 14. Detective Muse arrived at the scene and encountered Bassett on the driver's side of the vehicle. Officer Zaffutto, meanwhile, ordered Appellee to exit from the passenger side and asked him if he possessed any intravenous needles.[1] Appellee confirmed that a pouch located in his inside jacket pocket contained needles. Officer Zaffutto carefully

removed the pouch and placed it on the trunk of Appellee's car. N.T. at 17.

¶ 6 After Appellee and Basset were arrested and placed in custody for transport to the State College Police Station, Detective Muse seized the pouch, unzipped it, and looked inside to see if any uncapped needles would require special precaution in handling the pouch. N.T. at 17, 31. The pouch contained two capped needles, a metal spoon, and several bundles of what appeared to be heroin. Id. Also confiscated was Appellee's car, which the officers drove to the Ferguson Township Police Station. A subsequent vehicle search pursuant to a warrant uncovered additional heroin-related paraphernalia. N.T. at 18.

¶ 7 At the State College Police Station, a search of Appellee's person incident to his arrest uncovered six additional bundles, consisting of fifty-nine packets, of heroin. N.T. at 18. Informed of his *Miranda* rights, Appellee provided an oral and written confession during interrogation. N.T. at 36–37. He was charged with possession of heroin,[2] possession with the intent to deliver heroin,[3] possession of drug paraphernalia,[4] and criminal conspiracy,[5] though the conspiracy charge was dismissed at Appellee's preliminary hearing.

¶ 8 Before his case came to trial, Appellee filed an omnibus motion to suppress all incriminating evidence as the product of what he argued was an unlawful warrantless arrest. A hearing was held before the suppression court on May 3, 2001, and on May 17, 2001, the court entered an order granting Appellee's motion. Specifically,

---

1. Detective Muse explained that it is the policy of the Centre County Drug Task Force to begin a *Terry* frisk by first asking a suspected intravenous drug user/detainee if he or she currently possesses intravenous needles. The purpose of the question is to help prevent the officer from being stuck by a needle during a frisk for weapons. N.T. at 16.

2. 35 P.S. § 780–113(a)(16).

3. 35 P.S. § 780–113(a)(30).

4. 35 P.S. § 780–113(a)(32).

5. 18 Pa.C.S.A. § 903.

the court found that Appellee's arrest, body search, and confession all derived from the warrantless search of Appellee's pouch—a search that the court determined required a warrant because exigent circumstances were lacking.

¶ 9 In its timely appeal [6] from the court's order, the Commonwealth contends that the totality of the circumstances—including Appellee's pre-search statement that he possessed intravenous needles—provided probable cause to arrest Appellee for Possession of Drug Paraphernalia. Therefore, the Commonwealth argues, the subsequent search and seizure of all evidence was permitted as incidental to a lawful arrest.[7]

¶ 10 Our standard for reviewing the suppression of evidence is well-established. In *Commonwealth v. Smith*, 396 Pa.Super. 6, 577 A.2d 1387, 1388 (1990), we stated:

> Where the Commonwealth is appealing the adverse decision of a suppression court, a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record [which] as a whole remains uncontradicted. If the evidence supports the court's factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Robinson*, 438 Pa.Super. 119, 651 A.2d 1121, 1123 (1994).

¶ 11 The suppression court accepted the officers' uncontradicted account of events, and from such testimony first determined that the investigatory stop was supported by reasonable suspicion of Appellee's heroin possession.[8] We agree.

¶ 12 Law enforcement officers may conduct an investigatory stop and detention, which, though short of an arrest, nonetheless constitutes a seizure, if they have a reasonable suspicion based upon specific and articulable facts that criminality is afoot. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969)(holding *Terry* applies to stop and frisk cases that implicate Article I, Section 8 of the Pennsylvania Constitution); *Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa.Super.2000). Reasonable suspicion depends upon both the content of the information possessed by the police and its degree of reliability. *Commonwealth v. Wimbush*, 561 Pa. 368, 750 A.2d 807 (2000). Thus, like the assessment applicable to the determination of probable cause, quantity and quality of information are considered when assessing the totality of the circumstances, but with a lesser showing needed to demonstrate reasonable suspicion. *Commonwealth v. Zhahir*, 561 Pa. 545, 751 A.2d 1153 (2000).

¶ 13 Where, as here, the underlying source of police information is a known informant, there is a stronger case for acting upon the information than exists in the case of an anonymous informant. *See Adams v. Williams*, 407 U.S. 143, 146–47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (hold-

---

**6.** In conformity with the dictates of *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985) and Pa.R.A.P. 311(d) and 904(e), the Commonwealth has certified that the suppression order substantially handicaps and/or effectively terminates its prosecution of Appellee. Accordingly, we conclude that the present appeal is properly before us and we address the merits.

**7.** No Brief for Appellee was submitted on appeal.

**8.** Given the suppression court's own endorsement of the investigatory stop, we find its later opinion that an anticipatory search warrant was needed to stop Appellee incongruous and without support in the record.

ing that a tip from a known informer carried enough indicia of reliability to support a *Terry* search even though the same tip from an anonymous informant likely would not have). One reason for crediting the known informant's information with more reliability is that the known informant, unlike the anonymous one, faces risk of prosecution for filing a false claim should the information be untrue. *See Commonwealth v. Jackson*, 548 Pa. 484, 698 A.2d 571 (1997)(citing *Adams, supra.*).

■ ¶ 14 In addition, an informant's tip—even an anonymous tip—relating insider information or a person's future actions bears sufficient indicia of reliability to justify an investigatory stop when corroborated by police. *Wimbush*, 561 Pa. at 378, 750 A.2d at 812 (citing *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)).

> The anonymous tipster in *Alabama v. White* told police that the defendant would leave her apartment at a particular time, would travel to an identified motel and that she would have drugs inside a particular carrying case. The police stopped the defendant's car just short of the identified motel. In upholding the stop, the United States Supreme Court found that the tipster's information demonstrated "inside information—a specific familiarity with [the defendant's] affairs." *White*, 496 U.S. at 332, 110 S.Ct. 2412.... The Court then held that if an anonymous tip provides such insider information, including facts relat-

ing to "future actions of third persons ordinarily not easily predicted," then police corroboration of this insider information can support a finding of reasonable suspicion. *Id.*

*Wimbush*, 561 Pa. 368, 750 A.2d at 812.

■ ¶ 15 Here, "at least five" heroin users known [9] to the Centre County Drug Task Force told police that Appellee trafficked in heroin, and they provided intimate details of the routine he followed when purchasing his supply. The officers' collective observations corroborated accounts that Appellee would drive to Fats Gonzalez's North Philadelphia residence in the morning to buy heroin and consume some at the City Line Avenue T.G.I. Friday's before returning home. Because the officers corroborated all of the detailed, insider information provided by informants known to them, we agree with the suppression court that, at a minimum, reasonable suspicion existed to justify an investigatory stop.

¶ 16 We disagree with the suppression court, however, that the warrantless search of Appellee's pouch tainted all incriminating evidence collected in the case. The record shows, instead, that the recovery of heroin from Appellee's person was incidental to an arrest which derived not from Detective Muse's search of the pouch—indeed, Appellee's arrest preceded the search of the pouch [10]—but from Appellee's admission of needle possession

---

9. At the suppression hearing, Detective Muse named three of the informants.

10. Contrary to the suppression court's opinion, the record reveals that Appellee was arrested before Detective Muse searched the pouch:
    Q: Explain to me again when you believe Officer Zaffutto opened that pouch that Mr. Kondash turned over.
    A: He didn't. I did.

Q: And when did that happen?
A: Right as he was being secured in the vehicle and I was going back to my vehicle I zipped it open.
Q: So at that point Mr. Kondash was in handcuffs, arrested, and was being placed in the vehicle for transport?
A: Yes.
N.T. at 31.

during Officer Zaffutto's lawful *Terry* search.[11]

¶ 17 Upon encountering Appellee at the stop, Officer Zaffutto prepared to pat down for weapons. N.T. at 15–17. An officer may conduct a *Terry* frisk of a suspect's clothing for weapons if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Commonwealth v. Hall,* 558 Pa. 16, 27, 735 A.2d 654, 660 (1999)(quoting *Terry,* 392 U.S. at 27, 88 S.Ct. 1868). We find that Officer Zaffutto was entitled to secure his own safety with a pat down, as it was reasonable to believe that Appellee had not gone alone to North Philadelphia to buy a dealer's supply of heroin unarmed. *See In Interest of C.C.,* 780 A.2d 696 (Pa.Super.2001) (holding that it was reasonable for an officer to believe that a drug trafficker, selling in a high drug-trafficking area, was armed and dangerous).

¶ 18 Another basis for a pat down was the reasonable belief that Appellee, a suspected intravenous drug user who apparently had used just hours earlier, carried intravenous needles and syringes. The design of a syringe and needle allows for their employment as an easily concealed and potent weapon which can inflict a serious wound. Add to that threat the prospect of contracting hepatitis or HIV from an intravenous drug user's needle, and a needle's capacity to deliver grievous or even deadly injury should not be discounted. It is, therefore, reasonable to subject a suspected intravenous drug user properly detained at an investigatory stop to a limited pat down for needle possession to promote the officer's safety. *See State*

*v. Gonzalez,* 184 Ill.2d 402, 235 Ill.Dec. 26, 704 N.E.2d 375 (1998) (including needles among weapons subject to *Terry* ); *Worthey v. State,* 805 S.W.2d 435 (Tex.Crim. App.1991) (holding *Terry* frisk on reasonable suspicion of needle possession warranted). *See also Perry v. State,* 927 P.2d 1158 (Wyo.1996); *State v. Hunter,* 615 So.2d 727 (Fla.Dist.Ct.App.1993); *People v. Autry,* 232 Cal.App.3d 365, 283 Cal. Rptr. 417 (Cal.Ct.App.1991)(holding intravenous drug user's needle constitutes deadly weapon); *State v. Griffin,* 520 So.2d 1206 (La.Ct.App.1988).[12] Accordingly, Officer Zaffutto was justified in conducting a *Terry* search on Appellee during the investigatory stop.

¶ 19 In addition, we hold that Officer Zaffuto was permitted to preface the *Terry* search by asking Appellee if he possessed any needles in his clothing without first informing Appellee of his *Miranda* rights, as the dictates of *Miranda* do not attach during an investigatory detention. *See Miranda v. Arizona,* 384 U.S. 436, 477–478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Commonwealth v. Proctor,* 441 Pa.Super. 176, 657 A.2d 8 (1995); *Commonwealth v. Kloch,* 230 Pa.Super. 563, 327 A.2d 375, 380–381 (1975). Indeed, even during a custodial interrogation, the requirements of *Miranda* will be excused where police have reason to fear for their well-being and ask questions to ensure their safety and not to elicit incriminating responses. *Commonwealth v. Bowers,* 400 Pa.Super. 377, 583 A.2d 1165, 1170 (1990) (citing *New York v. Quarles,* 467 U.S. 649, 655–659, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984)). Therefore, Officer Zaffutto's question was a justifiable means to reduce the risk of puncturing his hand during a

---

**11.** Even if Appellee's arrest had stemmed from the warrantless search of the pouch, we find that the search of the pouch was also lawful. *See infra.*

**12.** Though from other jurisdictions and thus not binding on this Court, the cited decisions are instructive in the proper disposition of the present case.

*Terry* pat down of a suspected intravenous drug user and did not constitute interrogation under *Miranda. See United States v. Webster,* 162 F.3d 308, 332 (5th Cir.1998) (holding that officer's question whether detainee possessed needles that could injure officer during pat down was necessary to protect officer and did not constitute interrogation under *Miranda* ).[13]

¶ 20 Appellee's affirmative response was thus admissible against him, and it gave Officer Zaffutto probable cause to arrest for, at the very least, possession of drug paraphernalia—a charge included among those filed against Appellee. Consequently, the evolution of Appellee's investigatory stop into an arrest at that moment was proper, as was the subsequent search of Appellee's person as a valid search incident to a lawful arrest. *See Commonwealth v. Williams,* 419 Pa.Super. 380, 615 A.2d 416, 419 (1992) (holding officer may conduct warrantless search of an arrestee's person incident to a lawful arrest). Accordingly, the suppression of Appellee's admission of needle possession and the fifty-nine packets of heroin found on his person—products of a lawful *Terry* stop and subsequent lawful search incident to arrest—was error.

¶ 21 Finally, we address whether the warrantless search of the pouch was unlawful, requiring suppression of its contents and of the stationhouse confession.[14] As noted above, Officer Zaffutto first engaged Appellee with a permissible *Terry* question as to whether Appellee possessed needles which could cause him harm. Appellee's answer in the affirmative not only gave Officer Zaffutto cause under *Terry* to remove the needles for his own safety, it also provided probable cause to believe that the pouch contained illegal paraphernalia subject to immediate lawful seizure. We liken this case to "plain feel" cases permitting seizure where an officer acquires probable cause of a container's illegal contents during a protective pat down. *See Interest of C.C.,* 780 A.2d at 699 (holding that police may seize contraband detected during a *Terry* frisk where incriminating nature of the contraband is "immediately apparent").

¶ 22 Moreover, with his admission, Appellee revealed the contents of the pouch and thereby relinquished any expectation of privacy he had therein. *See Commonwealth v. Hendrix,* 426 Pa.Super. 616, 627 A.2d 1224, 1228–1229 (1993) (holding defendant had no expectation of privacy in a seized bag after revealing to a police officer that it contained a gun) (citing, *inter alia, United States v. Cardona–Rivera,* 904 F.2d 1149 (7th Cir.1990) (warrantless search proper after arrested defendant admitted a package contained cocaine)). Accordingly, with no expectation of privacy remaining in the pouch, there can be no constitutional violation associated with its warrantless search. As such, the search gave no cause to suppress either the contents of the pouch or any other evidence collected in the present case.

¶ 23 For the foregoing reasons, we reverse the order entered below and remand for further proceedings consistent with this opinion.

¶ 24 Order reversed. Case remanded. Jurisdiction relinquished.

---

13. Though from another jurisdiction and thus not binding on this Court, *Webster* is instructive in the proper disposition of the present case.

14. The evidence obtained from the pouch appears to have factored in Appellee's confession.