J-S03008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | | |
| v. | | |
| DARNELL THOMAS, | | |
| Appellant | | No. 253 EDA 2018 |

Appeal from the Judgment of Sentence Entered January 4, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0006648-2016

BEFORE:  BENDER, P.J.E., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:　　　　　**FILED APRIL 10, 2019**

Appellant, Darnell Thomas, appeals from the judgment of sentence of 6-12 months' incarceration and a consecutive term of 2 years' probation,[1] imposed following his conviction for carrying a firearm without a license[2] and carrying a firearm on the streets of Philadelphia.[3]  After careful review, we affirm on the basis set forth in the trial court's opinion.

The trial court set forth a full recitation of the facts of this case in its Pa.R.A.P. 1925(a) opinion.  **See** TCO at 1-4.  Briefly, Appellant was driving a

---

[1] At the sentencing hearing, the trial court immediately paroled Appellant "to house arrest," and "granted Appellant's oral motion to stay his sentence pending the outcome of this appeal."  Trial Court Opinion (TCO), 4/19/18, at 4.

[2] 18 Pa.C.S. § 6106.

[3] 18 Pa.C.S. § 6108.

vehicle in front of a public transit bus and impeded the bus's progress for six blocks, including when he failed to proceed through green lights at two intersections. This caused a shouting match between Appellant and the passengers and driver of the bus. When Detective Kevin Bradley (then Officer Bradley) approached the scene, Appellant exited his vehicle and appeared angry. Detective Bradley observed that Appellant's eyes were bloodshot, and he was staggering. Appellant also sounded incoherent to Detective Bradley, as his replies were not related to the questions he was asked. Detective Bradley also noticed that Appellant had three children in the back of his vehicle.

Detective Bradley believed that Appellant might engage in a physical confrontation with the passengers of the bus, although he did not make any explicit threats to do so. Acting out of concern for his own safety, as well as the safety of the children and the passengers, Detective Bradley frisked Appellant for weapons. When he discovered what appeared to him to be an empty holster on Appellant's leg, he asked him if he had a weapon. Appellant first denied that he had a weapon, before admitting that he might have one in his trunk. Detective Bradley subsequently searched the trunk and discovered a handgun. After verifying that Appellant did not have a license for the firearm, Detective Bradley arrested him.

Appellant filed a timely suppression motion, and the trial court conducted a suppression hearing on June 27, 2017. The court denied the motion to suppress on July 17, 2017. On October 3, 2017, Appellant waived

his right to a jury trial and the court held a stipulated non-jury trial. The court found Appellant guilty of the aforementioned offenses. On January 4, 2018, the trial court sentenced Appellant as stated above. Appellant filed a timely notice of appeal, and a timely, court-ordered Rule 1925(b) statement. The trial court issued its Rule 1925(a) opinion on April 19, 2018.

Appellant now presents the following questions for our review:

1. Did not the lower court err in denying Appellant's motion to suppress physical evidence where Appellant was subjected to detention, frisk, and search without adequate suspicion of criminal activity or facts leading the police to believe that [he] was armed and dangerous?

2. Did not the lower court err in denying Appellant's motion to suppress physical evidence where [he] was subjected to a custodial interrogation without being **Mirandized**?[4]

Appellant's Brief at 6.

After careful consideration of the record, the parties' briefs, and the well-reasoned opinion by the Honorable Stella Tsai, we affirm on the basis set forth in Judge Tsai's opinion. **See** TCO at 5-8 (finding that it was reasonable for Detective Bradley to suspect that Appellant might be dangerous and conclude it was necessary to conduct a **Terry**[5] frisk for weapons to ensure the safety

---

[4] **See Miranda v. Arizona**, 384 U.S. 436 (1966) (holding that statements obtained from defendants during a custodial interrogation, without full warning of constitutional rights, are inadmissible under the Fifth Amendment).

[5] **See Terry v. Ohio**, 392 U.S. 1 (1968).

- 3 -

of those present);[6] **and see** TCO at 8-11 (finding that Appellant was not subject to a custodial detention when he made the at-issue statements because, at that time, Appellant was not transported against his will, restraints were not used, Detective Bradley had not threatened or used force against him, and the detention was limited in scope to a brief pat down for weapons).

Judgment of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/19

---

[6] The trial court concluded that Detective Bradley was justified in believing Appellant might be dangerous based upon the following factors:

Appellant was engaged in a shouting match with the … [b]us [d]river and the passengers and his speech was incoherent; the conflict had dragged out on the streets of Philadelphia for several blocks; [Appellant] got out of his car without being directed to do so and seemed ready for a fight; and the immediate area, while mostly commercial, is well known to [Detective] Bradley for its frequency of narcotics transactions, shootings, and gun arrests. The presence of three small children in the back seat of Appellant's vehicle only amplified [Detective] Bradley's concerns about safety.

TCO at 7-8.

- 4 -



IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT
TRIAL DIVISION – CRIMINAL SECTION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, Appellee | : : : : | CP-51-CR-0006648-2016 |
| v. | : : : | |
| DARNELL THOMAS, Defendant-Appellant | : : | 253 EDA 2018 |

CP-51-CR-0006648-2016 Comm. v. Thomas, Darnell
Opinion

8098196661

**OPINION**

Tsai, J.

## I.  Introduction

Defendant-Appellant, Darnell Thomas (hereafter "Appellant" or "Mr. Thomas"),

appeals his judgment of sentence entered on January 19, 2018.  Appellant was convicted

of Carrying a Firearm without a License and Carrying a Firearm on the Streets of

Philadelphia (collectively "VUFA").[1]  This appeal is limited to our order which denies

Mr. Thomas's Omnibus Pre-trial Motion seeking the suppression of physical evidence

and statements made in response to police questioning.  For the reasons stated in this

opinion, we respectfully ask that the Supreme Court affirm (1) our order denying

Appellant's Omnibus Pre-trial Motion and (2) Appellant's judgment of sentence.

## II.  Factual and Procedural History

Detective Kevin Bradley is an eleven-year veteran of the Philadelphia Police

Force.  At the time of the traffic incident that gives rise to this appeal, Bradley ("Officer

Bradley") was a police officer assigned to 39th District.  Subsequent to the events of

---

[1] 18 Pa.C.S. § 6106(a)(1), 18 Pa.C.S. § 6108.

1

June 25, 2016, Officer Bradley was promoted to detective and assigned to the Northwest Detectives. N.T. (Suppression Hearing) 06/27/2017 at pp. 9-10.

On June 25, 2016 Officer Bradley was on routine patrol on the 1400 block of West Allegheny Avenue. N.T. (Suppression Hearing) 06/27/2017 at p.10. He wore plain clothes with a badge around his neck. *Id.* at p. 23. Although Officer Bradley described the area as a mix of commercial and residential uses, it is a location where he has conducted many narcotics surveillances, he has made 50 to 75 arrests--including five to ten that involved the recovery of guns--and a number of shootings have taken place. *Id.* at pp.12-13

Officer Bradley encountered a maroon Grand Marquis in front of a SEPTA bus that did not proceed through two consecutive green lights at 1400 West Allegheny Avenue. N.T. (Suppression Hearing) 06/27/2017 at p.13. Passengers had disembarked from the bus and were yelling at Appellant, who was the driver of the Grand Marquis. *Id.* at pp.14-15. Appellant yelled back at the passengers of the bus. *Id.* at p.16. The driver of the SEPTA bus was also yelling at Appellant; she informed Officer Bradley that the Appellant had impeded the progress of the bus for six blocks. *Id.* at pp.15, 25-26.

Appellant got out of his vehicle without being asked by the police, and appeared angry to Officer Bradley. N.T. (Suppression Hearing) 06/27/2017 at pp.15-16, 27, 29. When Officer Bradley spoke with the Appellant, he noticed that the defendant had blood shot eyes, was incoherent, and appeared to be staggering. It was not normal behavior to Officer Bradley, who then noticed three young children in the back of the Appellant's car. *Id.* at p.16. Officer Bradley began asking Appellant questions, but Appellant's replies were not related to the questions he was asked. *Id.* at p.16.

2

Officer Bradley also considered it unusual that Appellant would be blocking a bus and yelling at its passengers with three children in the back of his vehicle. N.T. (Suppression Hearing) 06/27/2017 at p.17. Based on his observations, Officer Bradley thought that Appellant might engage in a fight with the passengers of the bus. Officer Bradley acknowledged, however, that Appellant did not make any explicit threats against the passengers or the driver of the bus. *Id.* at pp.20-21, 28-29. Due to his concerns for officer safety and the safety of the other people in the area, including the children in the Appellant's car, Officer Bradley frisked Appellant for weapons. *Id.* at pp.17, 29-31. Officer Bradley did not locate any weapons on Appellant's person but felt what was immediately apparent to him to be an empty holster on Appellant's leg. *Id.* at pp.17-18, 32.

Officer Bradley then asked Appellant if he had a weapon. Officer Bradley recalled that Appellant first denied having a weapon, but then stated that he "might" have a gun in the trunk as Officer Bradley went to go open the driver's side door. N.T. (Suppression Hearing) 06/27/2017 at p.17. Officer Bradley acknowledged that this statement had not been included in his arrest paperwork or that he mentioned this statement during the preliminary hearing. *Id.* at p. 33.

Officer Bradley searched the trunk and located a black Hellcat handgun in a red backpack, which was open. N.T. (Suppression Hearing) 06/27/2017 at p.34. After he verified that the Appellant did not have a license to carry this gun, Officer Bradley placed the Appellant under arrest. *Id.*

Appellant testified on his own behalf. He explained that he was leaving his mother's house when he encountered the SEPTA bus at a stop sign. N.T. (Suppression Hearing) 06/27/2017 at p.38. He said that SEPTA bus driver tried to get in front of him

3

and then started to curse at him. *Id.* at p.40. When they arrived at the Broad Street intersection, Appellant recalled pulling up beside the SEPTA bus and walking over to the bus driver's window to address the situation. *Id.* at pp.40-41, 44-45.

Appellant acknowledged that the light may have turned green while this was going on. N.T. (Suppression Hearing) 06/27/2017 at p.41. He recalled that the SEPTA police arrived and was already speaking with the parties when Officer Bradley got involved. *Id.* Officer Bradley was outside the car when he placed the Appellant in handcuffs and pinned him to the back of his vehicle. *Id.* at pp.42, 49-50. Mr. Thomas does not recall volunteering any information. *Id.* at p.43.

We heard the motion to suppress on June 27, 2017, and held the motion under advisement. We denied Appellant's motion to suppress on July 17, 2017. On October 3, 2017, Appellant waived his right to a jury trial and proceeded to a stipulated non-jury trial before the undersigned. Appellant was found guilty of Carrying a Firearm without a License and Carrying a Firearm on the Streets of Philadelphia; sentencing was deferred so that a pre-sentence investigation report could be completed. N.T. (Trial) 10/03/2017 at pp.3-14.

On January 4, 2018, we sentenced Appellant to a term of incarceration of six to twelve months, with immediate parole to house arrest, followed by two years of reporting probation, and granted Appellant's oral motion to stay his sentence pending the outcome of this appeal. Appellant filed a timely notice of appeal on January 12, 2018 and later received an extension to file his concise Statement of Errors.

Appellant timely filed his Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P 1925(b) on April 6, 2018. Therein Appellant raises the following issues for appellate review:

4

1. The Trial Court erred by denying Appellant's pre-trial Motion to Suppress Physical Evidence, namely a firearm.

2. The Commonwealth failed to establish by specific and articulable facts that Philadelphia Police Detective Kevin Bradley had reasonable suspicion that Appellant was armed, dangerous, or carrying a weapon which would justify a frisk or pat-down of Appellant's clothing or person.

3. The Trial Court erred in finding that the frisk was justified by reasonable suspicion and therefore not a violation of Appellant's Constitutional rights under the Fourth Amendment to the United States Constitution or the heightened protections of the Pennsylvania State Constitution, Article One, Section Eight.

4. The Trial Court erred in its failure to suppress the firearm which was the fruit of a statement in response to police questioning during custodial interrogation before which *Miranda* warnings were required but not given.

5. The Trial Court erred in even considering Appellant's alleged statement as evidence due to the fact that it was nowhere in discovery, Counsel for Appellant had no notice of its existence prior to the day of the Motion to Suppress, and the first time the statement was heard was during direct examination of Detective Kevin Bradley.

6. The statement was allegedly made in response to police questioning in violation of the Fifth Amendment to the United States Constitution and Article One, Section Nine of the Pennsylvania State Constitution and should have also been suppressed for these reasons.

Appellant's 1925(b) statement.

## III. Discussion

### A. Officer Bradley Had Reasonable Suspicion to Conduct a Frisk of Appellant.

For purposes of this opinion, we have distilled Appellant's first three issues of his 1925(b) Statement to the following question: *Did the suppression court err in finding*

*that the frisk that lead to the recovery of the gun was supported by reasonable suspicion?* Our answer is no.

The Commonwealth bears the burden to establish, by a preponderance of the evidence, that the evidence at issue was obtained without violating Appellant's rights. *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-48 (Pa. 2012). The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures at the hands of the government. *Commonwealth v. Chase*, 960 A.2d 108, 112-13, 116 (Pa. 2008). A search conducted without a warrant is presumed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies. *Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000).

One such exception is a pat-down search for weapons, also known as the *Terry* frisk. *See, e.g., Commonwealth v. Johnson*, 86 A.3d 182, 199 (2014) (discussing that *Terry* frisks are permissible under both the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution); *Commonwealth v. Evans*, 153 A.3d 323, 327–28 (Pa. Super. 2016) (listing various exceptions to the warrant requirement, including "the stop and frisk exception").

A police officer may conduct a *Terry* frisk when the officer has reasonable suspicion "that criminal activity is afoot and that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Commonwealth v. Davis*, 102 A.3d 996, 999 (Pa. Super. 2014) (citations and quotation marks omitted). A *Terry* stop and frisk is "strictly limited to that which is necessary for the discovery of weapons that might present a danger to the

6

officer or those nearby." *Commonwealth v. Parker*, 957 A.2d 311, 315 (Pa. Super. 2008) (citation and quotation marks omitted).

To review an officer's decision to frisk for weapons, we balance two legitimate interests: "that of the citizen to be free from unreasonable searches and seizures; and that of the officer to be secure in his personal safety and to prevent harm to others." *Commonwealth v. Zhahir*, 751 A.2d 1153, 1158 (Pa. 2000) (citing *Dunaway v. New York*, 442 U.S. 200, 209, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)). Under Pennsylvania law, "[a]n overt threat by the suspect or clear showing of a weapon is not required for a frisk." *Commonwealth v. Mack*, 953 A.2d 587, 591 (Pa. Super. 2008). *See also Commonwealth v. Shine*, 784 A.2d 167 (Pa. Super. 2001) (officer responding to a radio call involving men with guns had reasonable suspicion to frisk two men involved in an argument; even though officer did not see any weapons, he was confronted with what he perceived to be an escalating violent situation and believed that a fight between the two men was imminent).

Appellant argues that the Commonwealth did not present specific and articulable facts to establish that Officer Bradley had a reasonable suspicion that Appellant was armed and dangerous, thus justifying the intrusion of a frisk for weapons. We respectfully disagree. We found that Appellant Officer Bradley testified credibly about the facts and circumstances which accounted for his reasonable suspicion that Appellant was dangerous and possibly armed: to wit, Appellant was engaged in a shouting match with the SEPTA Bus Driver and the passengers and his speech was incoherent; the conflict had dragged out on the streets of Philadelphia for several blocks; Mr. Thomas got out of his car without being directed to do so and seemed ready for a fight; and the immediate area, while mostly commercial, is well known to Officer Bradley for its

7

frequency of narcotics transactions, shootings, and gun arrests. The presence of three small children in the back seat of Appellant's vehicle only amplified Officer Bradley's concerns about safety.

Looking at all of these factors and the totality of the circumstances, we find that it was reasonable for Officer Bradley to suspect that the Appellant might be dangerous and conclude it was necessary to conduct a *Terry* frisk for weapons to ensure the safety of those present. We note that an officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Commonwealth v. Kondash*, 808 A.2d 943, 948 (Pa. Super. 2002).

## B. The Appellant Was Not Subjected to a "Custodial" Interrogation that Required *Miranda* Warnings.

We have distilled Appellant's first, fourth, and sixth issues to the following question: *Did the suppression court err in finding that the Appellant was not subjected to a custodial interrogation without Miranda warnings?* Our answer is again, no.

Appellant moved to suppress any statements he made to the police on the grounds that he was questioned by the police while in custody without *Miranda* warnings. N.T. (Suppression Hearing) 06/27/2017 at p.8. Appellant further requested that any evidence obtained as a result of these un-*Mirandized* statements must be suppressed a fruit of the poisonous tree. *Id.* at pp.8-9.

As previously stated, Officer Bradley frisked Appellant for weapons. N.T. (Suppression Hearing) 06/27/2017 at p. 17, 30-31. Officer Bradley did not locate any weapons on Appellant's person, but did detect an empty holster on Appellant's leg. *Id.*

8

at pp.17-18, 32. Based upon this discovery, Officer Bradley asked Appellant if he had any weapons on his person or in his vehicle. *Id.* at pp.18, 32-33. Appellant initially denied having a gun in his car, but then stated that there "might" be a gun in the trunk. *Id.* at pp.18, 33. Officer Bradley then went to search the trunk of Appellant's car, where he found a black .38 caliber handgun. *Id.* at p.19.

Appellant contends that Officer Bradley should have been read him *Miranda* warnings before asking any questions. The issue of *Miranda* warnings was not directly addressed in our conclusions of law on July 17, 2017, but we did determine that Mr. Thomas was subjected to an investigatory detention. N.T. (Suppression Hearing) 07/17/2017 at p.8. For the reasons set below, we conclude that while Appellant was subjected to an investigatory detention, he not in custody at the time Officer Bradley questioned him, and therefore Appellant was not entitled to *Miranda* warnings.

Generally, a suspect is to be advised of his right to remain silent and his right to have an attorney present during questioning when he/she is subject to a custodial interrogation, i.e., "questioning initiated by law enforcement officers after a person has been *taken into custody* or *otherwise deprived of his freedom of action* in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 443, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (emphasis added). *See also Commonwealth v. Dupre*, 866 A.2d 1089, 1106 (Pa. Super. 2005) ("[a] person is in custody for the purposes of a custodial interrogation when he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation.") (citation omitted). However, "[n]ot every detention is custodial for *Miranda* purposes." *Commonwealth v. Pakacki*, 901 A.2d 983, 988 (Pa. 2006). The *Pakacki* Court concluded that an individual who was patted down for

9

weapons was subjected to a *Terry* stop, and that it was not the equivalent of custody necessitating the reading of *Miranda* warnings. *Id.*[2]

Here the police approached Appellant's vehicle while Appellant was involved in a heated traffic dispute with the driver and passengers of a SEPTA bus. Based upon his observations of Appellant, Officer Bradley decided to conduct a frisk for weapons out of concern for his safety and the safety of others around him. When the frisk yielded a holster but not a firearm, Officer Bradley began to ask Appellant whether he had a gun on his person or in the vehicle. N.T. (Suppression Hearing) 06/27/2017 at pp.18, 32-33.

On cross-examination, Officer Bradley expressed his belief that Appellant was not free to leave during this interaction. N.T. (Suppression Hearing) 06/27/2017 at 32. At this moment when Officer Bradley was questioning Appellant whether he had a weapon, however, Appellant was not subjected to a deprivation of freedom that was the functional equivalent of custody that would require the reading of *Miranda* rights. *Commonwealth v. Murray*, 936 A.2d 76, 81 (Pa. Super. 2007); *see also Maryland v. Shatzer*, 559 U.S. 98, 113, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010) ("the temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody.") (citations omitted).

Appellant was frisked and questioned by Officer Bradley to confirm or dispel his suspicions, but Appellant was not transported against his will. Officer Bradley did not use restraints on him, nor did the officer show, threaten or use force against him other

---

[2] Further, "[t]he fact that a police investigation had focused on a particular individual does *not* automatically trigger 'custody,' thus requiring *Miranda* warnings." *Commonwealth v. Schwing*, 964 A.2d 8, 12 (Pa. Super. 2008) (emphasis original) (quoting *Commonwealth v. Mannion*, 725 A.2d 196, 200 (Pa. Super. 1999) (*en banc*)).

10

than the short-lived and relatively non-threatening detention necessary for the *Terry* frisk. Having examined the totality of the circumstances, we conclude that Appellant was not in custody for *Miranda* purposes and therefore not entitled to be given *Miranda* warnings. We properly denied his motion to suppress his statements and any evidence the police obtained as a result of those statements, to wit, the gun recovered from the trunk of Appellant's car.

As an aside, we note that Appellant has not directly challenged our conclusion that the search of the trunk was proper, except as part of his general assertion that we erred in not suppressing the firearm and his claim that as the fruit of the poisonous tree with respect to his claim that he gave un-*Mirandized* statements during a custodial detention. Appellant's 1925(b) statement at ¶¶ 1, 4. We stand by our finding that once Officer Bradley located the holster during the frisk and learned that a weapon might be located in the trunk, Officer Bradley had probable cause to search the open, red backpack in the trunk of Appellant's car for the firearm.

The Supreme Court of Pennsylvania determined in *Commonwealth v. Gary* that the prerequisite for conducting a warrantless search of a motor vehicle is "probable cause to search" and "no exigency beyond the inherent mobility of a motor vehicle is required." 91 A.3d 102, 138 (Pa. 2014) (plurality).[3] Appellant's statement to Officer Bradley that he might have a gun in his trunk, established probable cause for Officer Bradley to believe that a potential violation of the Uniform Firearms Act, 18 Pa.C.S. §

---

[3] While *Gary* was a plurality opinion announcing the judgment of the Supreme Court, the Superior Court has adopted the holdings of *Gary* in several of its published decisions. *See Commonwealth v. Green*, 168 A.3d 180, 186 (Pa. Super. 2017) (applying *Gary* to the review of search of car); *Commonwealth v. Freeman*, 128 A.3d 1231, 1243 (Pa. Super. 2015); *Commonwealth v. Hudson*, 92 A.3d 1234, 1241 (Pa. Super. 2014).

6106, had occurred. Under *Gary*, the inherent mobility of Appellant's vehicle was an exigent circumstance that permitted Officer Bradley to open and search the trunk without a warrant.

### C. The Suppression Court Did Not Err in Relying on Appellant's Statement to Officer Bradley, Which Had Not Been Disclosed in Discovery.

In the fifth paragraph of his Statement of Errors, Appellant argues that it was improper for us to rely on Officer Bradley's testimony regarding any statements that Appellant made to him during their interaction on June 25, 2016 because those statements had not previously been disclosed in discovery. The suppression record reflects that defense counsel did not object to Officer Bradley's testimony about the statements on the basis that the statement had not previously been disclosed to the defense in discovery. N.T. (Suppression Hearing) 06/27/2017 at pp.18-19. Instead, counsel chose to cross-examine Officer Bradley about Appellant's statement there "might" be a gun in the trunk of his car and test his credibility regarding the omission of this statement from any of the police reports Officer Bradley had authored. *Id.* at p.33. Officer Bradley took responsibility for the omission in a credible fashion and further admitted that he made no mention of Appellant's statements to him during his preliminary hearing testimony. *Id.*

Pennsylvania Rule of Criminal Procedure 573 governs pre-trial discovery in criminal cases. The rule provides that, *inter alia*, inculpatory statements and the identity of the person to whom it is made are subject to mandatory disclosure by the Commonwealth when they are: (1) requested by the defendant, (2) material to the case,

*and* (3) within the possession or control of the prosecutor. Pa.R.Crim.P. 573(B)(1)(b)

(emphasis added). Rule 573 also imposes a continuing duty to disclose:

> If, prior to or during trial, either party discovers additional evidence
> or material previously requested or ordered to be disclosed by it,
> which is subject to discovery or inspection under this rule, or the
> identity of an additional witness or witnesses, such party shall
> promptly notify the opposing party or the court of the additional
> evidence, material, or witness.

Pa.R.Crim.P. 573(D). However, "[w]here the evidence is equally accessible or

inaccessible to both the Commonwealth and the defense, the defense cannot use the

discovery rules against the Commonwealth for its failure to produce the evidence."

*Commonwealth v. Miller*, 172 A.3d 632, 647 (Pa. Super. 2017) (quoting *Commonwealth*

*v. Dent*, 837 A.2d 571, 585 (Pa. Super. 2003)). *See also Commonwealth v. Sullivan*, 820

A.2d 795, 801–804 (Pa. Super. 2003) (finding that the Commonwealth had not

committed a discovery violation where state trooper testified for the first time at trial

about defendant's admission to cocking the gun used in crime because the

Commonwealth had not known about this inculpatory statement).

In *Miller*, a corrections officer had not included an inculpatory statement that

defendant had made to him in his official report, and first told the prosecutor about the

statement during the trial. *Id.* The Superior Court, therefore, reasoned that the

inculpatory statement "was equally inaccessible to both the Commonwealth and the

defense" and noted the Commonwealth complied with its continuing duty to disclose by

immediately informing defense counsel of the inculpatory statement. *Id.* The Superior

Court held Miller could not use the discovery rules to preclude the Commonwealth from admitting the inculpatory statement. *Id.* at 647-48.[4]

Similar to *Sullivan* and *Miller*, Officer Bradley did not document Appellant's statement that there might be a gun in the trunk of his vehicle in his police report. Nor did he testify about it on a prior occasion. There is nothing in the record to suggest that the attorney for the Commonwealth knew about the inculpatory statement prior to the presentation of Officer Brady's testimony. Until the time of its disclosure, as in *Sullivan* and *Miller*, the statement was equally accessible or inaccessible to both the Commonwealth and the defense and thus not subject to suppression as a remedy under Rule 573 of the Rules of Criminal Procedure.

Moreover, once the inculpatory statement was disclosed at the suppression hearing, Appellant's counsel did not object or raise the alleged discovery violation. Rather than object, Appellant used the statement on cross-examination to confront Officer Bradley about the omission to challenge the officer's credibility.

Appellant has not demonstrated that our decision to admit Officer Bradley's testimony was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. Without such evidence, our admission of Appellant's statement was proper. *Commonwealth v. Poplawski*, 130 A.3d 697, 716 (Pa. 2015) (citations omitted) ("the admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed

---

[4] Defense counsel in *Miller* declined an invitation to seek suppression of the inculpatory statement, electing to cross-examine the corrections officer "extensively about his untimely disclosure and omission within the report as part of his broader attempt to undermine (the correction officer's) credibility." 172 A.3d at 647.

an abuse of discretion... a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous").

## IV.  Conclusion

For the reasons discussed *supra*, we respectfully request that our order denying Appellant's motion to suppress and Appellant's judgment of sentence be affirmed.


BY THE COURT:

_____
Stella Tsai, J.

April 19, 2018

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
### FIRST JUDICIAL DISTRICT
### TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF        :      CP-51-CR-0006648-2016
PENNSYLVANIA,        :
    Appellee             :
                        :
         v.            :
                        :
DARNELL THOMAS,        :      253 EDA 2018
Defendant-Appellant        :

### PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Larry Goode, Esq.
Philadelphia District Attorney's Office, Appeals Unit
3 South Penn Square
Philadelphia, PA 19107
Type of Service: Interoffice Mail

Jules Norris Szanto, Esq.
1700 Market St. Suite 1005
Philadelphia, PA 19103
Type of Service: First Class Mail

Date: _4/19/2018_                 _Jeffrey Chu_
                                           Jeffrey A. Chu, Esq.
                              Law Clerk to the Honorable Stella Tsai