J-S53007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.Z.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.Z.E. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 21 EDA 2020 |

Appeal from the Order Entered December 4, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-JV-0001650-2019

BEFORE:   SHOGAN, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED FEBRUARY 10, 2021**

Appellant, B.Z.E., appeals from the dispositional order[1] entered on December 4, 2019, in the Court of Common Pleas of Philadelphia County.  We affirm.[2]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]  "In juvenile proceedings, the final order from which a direct appeal may be taken is the order of disposition, entered after the juvenile is adjudicated delinquent.  The order of disposition in a juvenile matter is akin to the judgment of sentence in a criminal matter in that both are final orders subject to appeal."  **In Interest of P.S.**, 158 A.3d 643, 649 (Pa. Super. 2017) (internal citations omitted).

[2]  This Court is not bound by the rationale of the lower court, and we may affirm the trial court on any basis supported by the record. **Commonwealth v. Wilcox**, 174 A.3d 670, 674 n.4 (Pa. Super. 2017).

The juvenile court summarized the facts of the delinquent acts as follows:

> At the November 12, 2019[] hearing, Officer Mark Kimsey, Badge # 2786, of the Philadelphia Police, testified on the Motion to Suppress Physical Evidence.  He testified that on September 21, 2019, he and his partner, Officer Gibson,[3] Badge # 2009, were in uniform and in a marked police vehicle on routine patrol southbound on Broad Street when they observed a white Nissan proceeding northbound on Broad Street with four (4) males inside the vehicle.
>
> One of the males who was seated in the front passenger seat matched the description of an individual wanted for several armed carjackings.  Police Officer Kimsey identified [Appellant, who was sixteen years old,] as the front seat passenger.  The police officers made a U-turn and started following the white Nissan.  Officer Kimsey observed the white Nissan turn right onto Hunting Park Avenue.  The white Nissan disregarded red traffic signals at the intersections of Hunting Park Avenue and Old York Road and Hunting Park Avenue and Ninth Street.  The white Nissan continued east on Hunting Park Avenue and made a left turn onto northbound Fifth Street continuing until it stopped for a traffic signal at the intersection of Fifth and Bristol Streets.  The police officers pulled up directly behind the white Nissan and activated the emergency lights.  Officer Kimsey observed damage to the body on the white Nissan.  Officer Kimsey noted that body damage was a tactic of carjackings in the area.  When the traffic light turned green, the white Nissan crossed over Bristol Street and pulled over to the right and stopped.  Officer Kimsey described the area from Broad Street at Hunting Park Avenue to the intersection of Fifth and Bristol Street as a high crime area noted for carjackings, shootings and drug sales.
>
> Officer Kimsey and his partner then approached the white Nissan to speak with the driver of the vehicle as to why the vehicle was stopped.  Upon approaching the vehicle, Officer Kimsey smelled unburnt marijuana.  Officer Gibson frisked [Appellant] for his safety and found a firearm under the right front seat.  Another

---

[3] Officer Gibson's given name is not identified in the record.

firearm was recovered from the glovebox[,] and a ski mask was recovered from the pocket panel of the right front passenger door.

Juvenile Court Opinion, 6/29/20, at 3–4.

The juvenile court summarized the procedural history as follows:

As a result of an arrest that occurred on September 21, 2019, [Appellant] was arrested on charges of Carrying a Firearm without a License, 18 [Pa.C.S.] § 6106([a])(1), (F-3), Possession of a Firearm by a Minor, 18 [Pa.C.S.] § 6110[.1(a)], (M1) and Carrying a Firearm in Philadelphia, 18 [Pa.C.S.] § 6108, (M1).

In the Delinquency Petition filed in the Philadelphia County Court of Common Pleas on September 21, 2019, the Commonwealth alleged that:

On September 21, 2019, at or near the 4400 block of North 5th Street, Philadelphia, [Appellant] possessed a firearm while being prohibited from doing so and carried a firearm without a license and on the public streets of Philadelphia.

On November 12, 2019, at the Adjudicatory Hearing, [Appellant] appeared before the [c]ourt. The [c]ourt denied [Appellant's] Motion to Suppress Physical Evidence[,] and he was found guilty of all charges. The [c]ourt adjudicated [Appellant] delinquent and ordered that Appellant be held at the Philadelphia Juvenile Justice Center (PJJC). The matter was continued until December 4, 2019, for a Dispositional Hearing.

On December 4, 2019, the [c]ourt ordered that [Appellant] be placed in a Residential Treatment Facility at the Pennsylvania State Department of Public Welfare. The matter was continued until December 17, 2019, for a Status of Transfer Hearing.

On December 17, 2019, the [c]ourt was advised that transport was pending. The matter was continued until January 8, 2020, for a Status of Transfer Hearing.

On December 23, 2019, [Appellant's] prior attorney, Denise J. Mignucci, Esquire, filed a timely Notice of Appeal, and requested the Notes of Testimony from the Court Reporter. [Appellant's]

Counsel also filed a Petition for Leave to Withdraw as Counsel for [Appellant].

On December 23, 2019, [Appellant's] prior attorney, Denise J. Mignucci, Esquire, filed a Preliminary Statement of Errors Complained of on Appeal.

On January 6, 2020, the [c]ourt entered an order directing [Appellant] to file a Statement of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925(b) within twenty-one (21) days. The [c]ourt also entered an Order permitting Denise J. Mignucci, Esquire, to withdraw as [Appellant's] counsel. Gary Server, Esquire, was thereafter appointed to represent [Appellant].

On January 13, 2020, the [c]ourt entered an Order vacating its order of January 6, 2020, and permitted [Appellant's] counsel, Gary Server, Esquire, to file a Supplemental Statement of Errors Complained of on Appeal upon receipt of the notes of testimony.

On January 29, 2020, [Appellant's] new counsel, Gary Server, Esquire, filed a Supplemental Statement of Errors Complained of on Appeal.

Juvenile Court Opinion, 6/29/20, at 1–3.

Appellant raises the following issue, which was the single issue he raised in his Pa.R.A.P. 1925(b) statement: "Did the [c]ourt err where it failed to suppress the evidence of weapons found during a warrantless and nonconsensual search of a vehicle in which [Appellant] was a passenger?" Appellant's Brief at 6.

The standard of review an appellate court applies when considering an order denying a suppression motion is well established:

In evaluating a suppression ruling, we consider the evidence of the Commonwealth, as the prevailing party below, and any evidence of the defendant that is uncontradicted when examined in the context of the record. ***Commonwealth v. Sanders***, 42 A.3d 325, 330 (Pa. Super. 2012). This Court is bound by the

factual findings of the suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error. *Id.*

*Commonwealth v. Haynes*, 116 A.3d 640, 644 (Pa. Super. 2015). Additionally, we may consider only the evidence presented at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1085–1087 (Pa. 2013).

On appeal, Appellant concedes that Officer Kimsey "had the reasonable suspicion necessary to stop the vehicle . . . ." Appellant's Brief at 15. He asserts, however, that the officers lacked probable cause to search the car. *Id.* at 17, 19.

There are three categories of interactions between private citizens and the police. *Interest of A.A.*, 195 A.3d 896, 904 (Pa. 2018). "A 'mere encounter' does not require any level of suspicion or carry any official compulsion to stop or respond ... an 'investigative detention' permits the temporary detention of an individual if supported by reasonable suspicion ... and an arrest or custodial detention ... must be supported by probable cause." *Id.*

Here, we are initially concerned with an investigative detention.

> To maintain constitutional validity, an investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion. *Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884, 889 (2000). The asserted grounds for an investigative detention must be evaluated under the totality of the circumstances. *See United States v. Cortez*, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). So long as the initial detention is lawful, nothing precludes a police officer from acting upon the fortuitous

discovery of evidence suggesting a different crime than that initially suspected—such as the odor of alcohol on the breath of a driver . . . . However, an unjustified seizure immediately violates the Fourth Amendment rights of the suspect, taints the evidence recovered thereby and subjects that evidence to the exclusionary rule. *See, e.g.,* [*Commonwealth v.*] *Melendez*, 676 A.2d [226,] 229–230 [(Pa. 1996)].

*Commonwealth v. Hicks*, 208 A.3d 916, 927–928 (Pa. 2019), *cert. denied sub nom.*, *Pennsylvania v. Hicks*, 19-426, 2019 WL 6689877 (U.S. Dec. 9, 2019).

Officer Kimsey stopped the Nissan that went through two red lights at midnight in Philadelphia. N.T., 11/12/19, at 7. *See Commonwealth v. Scarborough*, 89 A.3d 679, 684–685 (Pa. Super. 2014) (night-time stop increases risk to officers). The stop was in a high-crime area known for many recent armed carjackings. N.T., 11/12/19, at 15. *Scarborough*, 89 A.3d at 684–685 (a stop in a high-crime area increases risk to officers). Appellant matched the description of a suspect wanted for multiple armed carjackings in the area. N.T., 11/12/19, at 12. The vehicle had rear body damage, a potential signal that the car had been stolen in a carjacking. *Id.* at 10. There were two officers present, but four passengers in the stopped vehicle. *Commonwealth v. Mack*, 953 A.2d 587, 591 (Pa. Super. 2008) (whether an officer is outnumbered is a factor in determining an officer's risk). The combination of all of this information gave officers reasonable suspicion that there might be a firearm in the automobile that could pose a risk; indeed,

officers found guns under Appellant's seat and in the glove compartment. N.T., 11/12/19, at 11, 16.

We agree with the juvenile court that Appellant's suppression motion properly was denied. Officer Kimsey testified police initially stopped the white Nissan for "a motor vehicle violation." N.T., 11/12/19, at 16. Police observed the car run two red lights shortly after midnight. *Id.* at 7, 8 ("[W]e were able to see the vehicle run the red light at Old York Road . . . on Hunting Park" and "the red light at 9th and Hunting Park Ave."). Police stopped the automobile in a high crime area known for "several recent carjackings," "gun[-]point vehicle thefts," and "narcotics" and "gunshot calls." *Id.* at 15–16. Officer Kimsey testified that Appellant matched the flash description broadcast the day prior relating to a recent carjacking. *Id.* at 12. Moreover, the officer testified that the Nissan "had damages consistent with other carjackings that we've been involved with." *Id.* There were four passengers in the stopped Nissan and only two police officers.

Officer Kimsey frisked the driver of the vehicle; also for officer safety, Officer Gibson frisked Appellant and located a firearm under the front passenger seat and then ultimately, another firearm in the glove box. *Id.* at 11. This weapon sweep constituted an investigative detention governed by *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

> "A *Terry* search, unlike a search without a warrant incident to a lawful arrest, is not justified by any need to prevent the

disappearance or destruction of evidence of crime.[4] The sole justification of the search is the protection of police officers and others nearby." [**Michigan v. Long**, 463 U.S. 1032, 150 n.14 (1983)] (citation and quotation omitted). The Court stated that an officer must therefore have reasonable suspicion that the person subject to the stop has a weapon in order to conduct a lawful search of the passenger compartment of a vehicle at the time of the stop. **Id.**

**Commonwealth v. Cartagena**, 63 A.3d 294, 299 (Pa. Super. 2013) (*en banc*) (footnotes omitted). "An officer may conduct a **Terry** [search] for weapons if a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." **Commonwealth v. Kondash**, 808 A.2d 943, 948 (Pa. Super. 2002) (internal quotation marks and citations omitted). Such a belief must be based on "specific and articulable facts, that the detained individual may be armed and dangerous." **Commonwealth v. Clemens**, 66 A.3d 373, 381 (Pa. Super. 2013) (citation omitted). Further, a determination of whether reasonable suspicion exists must be based on the totality of the circumstances and involves a fact-specific case-by-case inquiry. **Scarborough**, 89 A.3d at 683. "[W]here a sufficient number of [circumstances] coalesce, reasonable suspicion will be found." **Id**.

The courts also have plainly held that officer safety concerns are heightened during traffic stops. The United States Supreme Court recently emphasized that "[t]raffic stops are especially fraught with danger to police officers, so an officer may need to take

---

[4] "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." **Adams v. Williams**, 407 U.S. 143, 146 (1972).

certain negligibly burdensome precautions in order to complete his mission safely." ***Rodriguez v. United States***, 135 S.Ct. 1609, 1616 (2015) (internal quotation marks and citations omitted). Safety concerns are even greater when the motor vehicle stop occurs at night.

***Commonwealth v. Chase***, 960 A.2d 108, 120 (Pa. 2008). "The principles of ***Terry*** apply to all occupants of the stopped vehicle, not just the driver." ***Commonwealth v. Simmons***, 17 A.3d 399 (Pa. Super. 2011).

In consideration of the totality of the circumstances, in the light most favorable to the Commonwealth, the evidence presented at the suppression hearing supports the conclusion that police properly stopped the white Nissan and frisked the driver and Appellant, the front seat passenger, for weapons. While a ***Terry*** search is limited in scope, once justified, an officer may search the entire area in which a weapon might be readily accessible. ***See***, ***e.g.***, ***Commonwealth v. Murray***, 936 A.2d 76 (Pa. Super. 2007) (upholding a protective search of the interior of a vehicle where police officers stopped a defendant for a motor vehicle violation, in a high crime area, and officers saw "excessive movement" inside the car).

Accordingly, and in light of the foregoing, we discern no error by the suppression court in denying Appellant's motion to suppress the evidence obtained in the traffic stop and ***Terry*** search.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 2/10/2021*